No. 19,685.

THE BANK OF COMMERCE OF CHANUTE, *Appellant,* v. W. FRANK SAMS, *Appellee.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Ownership—Cashier's Statement as to Ownership Competent against the Bank.* Testimony that a cashier of a bank told the maker of a note, nine months after its maturity, that the bank held the note for collection, is competent evidence on the question whether the bank was the owner of the note when it sought to recover on it several years afterwards, and when the bank asserted that its ownership of the note was based upon its acquisition a few days after its execution and long before it was due.

2. SAME — *Subsequent Death of Cashier — His Statements Still Competent.* The fact that the cashier was dead when the bank afterwards asserted its ownership and sought to collect on the note as its own property did not render incompetent the testimony showing the conversation between the cashier and the maker at the time the bank sought to collect for the benefit of the original payee, nor does such testimony violate any rule of evidence touching transactions with deceased persons.

3. SAME—*Evidence of Ownership.* On March 8, 1907, defendant gave his note in favor of T., due September 8, 1907. On June 30, 1908, the

cashier of a bank told defendant that the bank had received the note from T., for collection: *Held*, that when the bank in January, 1912, sued as owner of the note, asserting that it acquired it before maturity, the fact that the bank, through its cashier, sought to collect on the note in 1908 on behalf of T., is competent evidence on the question of ownership of the note.

4. SAME—*Verdict Conclusive as to Facts.* A general verdict forecloses all disputed questions of fact, and in the case at bar it determines adversely to the plaintiff, (1) its ownership of the note; (2) the time of the alteration of the instrument; (3) its claim to be a holder in due course; and the result is to defeat a recovery altogether.

Appeal from Neosho district court; JAMES W. FINLEY, judge. Opinion filed October 9, 1915. Affirmed.

*H. P. Farrelly,* and *T. R. Evans,* both of Chanute, for the appellant.

*John J. Jones, James A. Allen,* both of Chanute, and *James W. Reid,* of Parsons, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The chief question in this case arises from the admission of certain testimony offered by the defendant in an action to recover on a note given for certain bonds issued by a cement company. Defenses of misrepresentation and fraud and want of consideration were eliminated by the district court. Another defense was the alteration of the note after its execution and without the defendant's consent, but this case should be determined upon the main defense, which was a verified denial of the plaintiff's ownership of the instrument.

The note was dated March 8, 1907, and due September 8, 1907. The plaintiff brought this action on January 30, 1912, over four years after its maturity. There was substantial evidence tending to show that the plaintiff bank acquired the note within a few days after its execution. It appears that the bonds for which the note was given were deposited in the bank with the note, presumably as collateral security, and as the interest on the bonds was paid credits for interest on the note were made by the bank. The defendant testified that he never received the bonds, never agreed that the bonds should

be deposited with the bank, and never authorized the credits on the note.

Over the objection of the plaintiff the defendant was permitted to testify that in June, 1908, after the note was nine months past due, he was informed by plaintiff's cashier and managing officer, in the bank, that the payee had sent the note to the bank for collection, and the defendant refused payment, and the cashier said, "All right, I will send it back to him and tell him what you say."

Since the bank grounded its whole claim of ownership of the note upon its acquisition within a few days after its execution and long before its maturity, this testimony, if competent and found by the jury to be true, affirmatively disproved the plaintiff's ownership. Before this action was commenced the bank cashier died.

The jury found a general verdict for the defendant, and this verdict concludes all questions of fact upon which there was substantial and competent evidence.

Error is assigned on the admission of the defendant's testimony touching the alleged conversation between the plaintiff's cashier and the defendant in 1908, when the defendant was informed that the payee had sent in the note for collection.

1. In support of this contention many authorities are cited on the familiar doctrine that the declarations of an agent, not within the scope of his authority, do not bind his principal.

But the converse doctrine is equally well established, that the declarations of an agent within the scope of his authority and while engaged in the exercise of it do bind his principal.

What is the scope of authority delegated to a bank cashier when, as in this case, he was the principal managing officer?

In *Ellicott, Assignee, v. Barnes,* 31 Kan. 170, 1 Pac. 767, it was said:

"The cashier is the executive officer or agent of the financial department of the bank, and in all the duties imposed upon him by law or usage, as such cashier he acts for the bank and speaks for the bank." (p. 172.)

The case of *Plymouth County Bank v. Gilman,* 3 S. Dak. 170, 52 N. W. 869, 44 Am. St. Rep. 782, illustrates both sides of the rule. There the defendant had given the bank his note and transferred to the bank certain other notes and

a mortgage as security. The collateral notes and mortgage did not realize sufficient to pay the defendant's note. In an action by the bank the defendant testified to a conversation with the cashier:

" 'State what talk you had concerning these (Mason) notes at that time.' To which he answered: 'I went in and asked him how much he collected; if he got all the notes. He said, "No," and I was surprised, and found fault with him.' Plaintiff's counsel objected to any evidence as to the statements of the cashier, on the ground that such statements were incompetent, irrelevant, and immaterial, and upon the further ground that an admission of the cashier of the bank is incompetent, as he can not bind the bank by such admission. The objection was everruled, and plaintiff duly excepted. Witness then continued: 'He said it had been hard times; hated to push him. . . . Told me there was no need of worrying; it was their fault. . . . The cashier told me he would wait, and take it (interest) out of these notes. It had been through their neglect; and that he did n't consider the interest.' Plaintiff's counsel then moved the court to strike out this evidence, which motion was denied, and plaintiff excepted. The principal ground relied on to sustain the motion was that the admission of the cashier of the bank was incompetent as against the bank, and that an officer of a bank can not, by such admission, bind the bank, except when he is engaged in transacting the business in which the admission is made. The counsel, in support of their position, rely upon the case of *First Nat. Bank of Canton v. North*, 6 Dak. 136, 145, 41 N. W. 736, 50 N. W. 621. In that case it was sought to give the statement of the president of the bank in regard to a certain mortgage executed to the bank three days previous to the statement. The court held that the statement of an officer of the bank, made after the transaction was closed, could not be received to bind the bank; that the statement of an officer of a corporation, not made at the time of the transaction, and as a part of it, and not, therefore, constituting a part of the *res gestæ*, was inadmissible to bind the corporation. But the case at bar presents a very different question from that presented in the case cited, and must be controlled by other principles of law. In this case the transaction in relation to the Mason notes and mortgage was not closed. It was a transaction begun in January, 1875, but not closed until the sale of the mortgaged property in 1881, and hence the statement of the cashier as to the fact that the notes were not collected, and what steps the bank had taken in regard to the collection, were, perhaps, competent, as statements made in the line of his duty, and while the transaction was still pending. This law is well illustrated by the cases of *Morse v. Railroad Co.*, 6 Gray, 450, and *Simpson v. Waldby*, 63 Mich. 439, 30 N. W. 199. In the former case, in an action by a passenger for the loss of his trunk, the admissions of the baggage master as to the manner of the loss, made the next morning in answer to the inquiries by the owner of the trunk, were held competent as against the company, it being part of the duties of such agent to deliver the baggage of passengers, and to account for the same

Bank v. Sams.

if missing, if inquiries are made within a reasonable time. In the latter case, drafts were deposited with a bank for collection. In a suit against the bank to recover the amount of the drafts the plaintiff testified to a statement made by the bookkeeper of the bank, when he, plaintiff, was calling at the bank, and looking for his money, that the drafts had been paid; and the court held it was admissible, as it was an admission made in the course of his duties and his agency, and constituted a part of the res gestæ. (*Burgess v. Wareham,* 7 Gray, 345; *Burnside v. Railroad Co.,* 47 N. H. 554.) But in this class of cases the courts are careful to limit the admissions to the statements that an officer or agent of a corporation is authorized to make to inquiries made of him in the line of his duty, and while the transaction is still in process of completion, and to the statement of facts only that are necessarily communicated. But while we think it was competent to give the statement of the cashier as to any fact relating to the collection of the notes, we are of the opinion that it was not competent to give his statement that the failure to collect the notes was the 'fault' and 'neglect' of the bank. Those were not the statements of facts relating to the collection or noncollection of the notes, but an expression of the mere opinion of the cashier as to the conduct of the bank. It was no part of his duty as cashier, or in the line of his duty, to express any opinion as to the performance or failure to perform its obligations to the defendant." (p. 174.)

Assuming, as we must, the truth of defendant's evidence, the cashier told him that the bank had received the note from the payee for collection. It is customary and lawful for banks to make such collections. It is the cashier's duty to attend to them. How, then, can it be said that the declarations of the cashier were not within the scope of his authority? How would it be possible for the cashier to discharge his duty without informing the defendant as he did? And when defendant refused payment, was it not the duty of the cashier to return the note to the payee? Since payment was refused, neither the cashier nor the bank could do otherwise.

And the statements of the cashier only pertained to the matters before him. They were germane to the subject and we must decide that evidence concerning them was competent and admissible.

2. What effect attaches to the fact that the cashier was dead when this evidence was admitted? Did this infringe against some positive rule of evidence relating to transactions with deceased persons?

No such rule is cited. Counsel quote respectable authorities that the self-serving testimony of a defendant as to con-

versations with a dead man should be received with great caution and close scrutiny. It certainly should be so received. But how can we say that it was not thus received by the trial court and jury? Every legal presumption is that they did so receive it; and that only after great caution and close scrutiny did they accept it as true. We acknowledge, of course, that counsel for appellant do not urge that this evidence was inadmissible under section 320 of the revised code or any similar statutory provision. They merely inveigh against the credence given by the jury to this alleged conversation with a man now dead. This subject is discussed in *Mendenhall v. School District,* 76 Kan. 173, 176, 90 Pac. 773, in which it was pointed out that such statutes do not relate to officers or agents of corporations.

3. Touching the alteration defendant testified that when he executed the note it read, "payable to the order of J. F. Townsend." Townsend's agent testified that before defendant signed it, and in defendant's presence, he struck out the words "the order of" and inserted the word "bearer." The general verdict is a finding of fact in defendant's favor on this disputed point. If the bank were a holder in due course, without notice of the alteration, it could recover according to its original tenor, but the general verdict forecloses that question. And since the alteration was material, and the bank had no rights superior to those of the original payee, this defeats a recovery altogether. (Gen. Stat. 1909, §§ 5377, 5378; *Hocknell v. Sheley,* 66 Kan. 357, 71 Pac. 839; *Edington v. McLeod,* 87 Kan. 426, 428, 124 Pac. 163; *Burgess & Co. v. Blake et al.,* 128 Ala. 105, 28 South. 963, 86 Am. St. Rep. 78, 86-95.)

The judgment, turning as it does on facts established by some competent testimony and concluded by a general verdict, can not be disturbed. It is therefore affirmed.