## STATE OF KANSAS.

## JANUARY TERM, 1916.

PRESENT:

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. SILAS W. PORTER,
HON. JUDSON S. WEST, } JUSTICES.
HON. JOHN MARSHALL,
HON. JOHN S. DAWSON,

No. 18,741.

THE KANSAS NATIONAL DRILL & MANUFACTURING COMPANY, *Appellant*, v. THOMAS M. REDD, as Sheriff of Miami County, etc., *Appellee*.

### SYLLABUS BY THE COURT.

1. ATTACHMENT—*Replevin—Tender of Property to Owner.* Findings of fact relating to a tender of property examined and found to justify the refusal of a peremptory instruction that no tender had been made.

2. SAME—*Verdict Sustained by Evidence.* Evidence examined and found sufficient to sustain the verdict.

3. SAME—*Tender—Instructions.* Instructions pertaining to the sufficiency of a tender of property used in well drilling examined and held to be a fair statement of the law so far as concerns the appellant.

4. SAME—*Sufficient Evidence of Tender.* Some well-drilling property on part of which the plaintiff held a mortgage and on part of which it held a bill of sale was attached by the sheriff at the instance of a lumber company to satisfy a debt of the operators of the drilling machinery. The plaintiff brought replevin, and a redelivery bond was given. The well-drilling property, being large and unwieldy, was being kept out-of-doors at the time these proceedings began, and it was not physically disturbed by the sheriff in the service of the attachment process. A few days after the redelivery bond was given, the plaintiff's agent was tendered a return of the property by the

1—97 KAN.

manager of the lumber company, who was also the sheriff's representative, who said: "If they are your machines, take them." *Held*, a sufficient tender of the return of the property.

5. SAME. The foregoing was a sufficient tender although the sheriff's representative and attaching creditor also declared that he would only pay such damages as a judge and jury might determine.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed January 8, 1916. Affirmed.

*W. L. Joyce,* of Paola, and *L. C. Boyle,* of Kansas City, Mo., for the appellant.

*Frank M. Sheridan,* and *Bernard L. Sheridan,* both of Paola, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This case arises from an attachment suit, followed by replevin, a redelivery bond, and the usual incidents thereto.

In 1905 a partnership engaged in the business of drilling oil and gas wells in Miami county became indebted to a lumber company for coal, lumber and other materials. The lumber company brought suit against the partnership and attached certain drilling machines and equipment on the assumption that they were the property of the partnership.

The Kansas National Drill & Manufacturing Company, the plaintiff, held a chattel mortgage on the drilling machines, and some days before the attachment suit was begun it had procured a bill of sale for the property, or part of it, and was in possession of it at the commencement of the attachment proceedings.

The plaintiff brought replevin against the sheriff to recover the property. A redelivery bond was executed by the sheriff at the instance of the lumber company, and the property thereby remained in the sheriff's possession under the attachment proceedings, unless the sheriff made a sufficient tender in law for the return of the property, and that is the principal question involved in this appeal.

In answer to special questions the jury found that shortly after the giving of the redelivery bond the defendant tendered back the property to plaintiff, and that it had not depreciated

in value from the time the redelivery bond was executed until the time of the tender. The general verdict was for the defendant.

Plaintiff assigns error: (1) that the evidence showed no legal tender and that a peremptory instruction to that effect should have been given; (2) that the verdict was against the weight of the evidence; (3 and 4) error in the court's instructions.

1. The record and the briefs leave us to infer that the drilling machinery in question, on account of its character and the custom of the country, was kept out-of-doors somewhere "out in the country," and when it was taken charge of by the sheriff in the attachment proceeding the assumption of possession was formal rather than actual. That is to say, it was not removed or physically disturbed by the sheriff. He merely took legal possession of it. So, too, when the plaintiff brought replevin, and the redelivery bond was given, the physical situation of the property remained as before. The legal right of possession, for the time being, remained in the sheriff. The physical situation of the property thus continued, except as deteriorated by weather and non-usance, until the time of the trial.

Since the taking possession of the property was formal rather than actual, the tender of its return should be viewed in the same light. The possession continued in the defendant unless a sufficient tender for its return was made. (*Turner v. Reese,* 22 Kan. 319.) The plaintiff says there was no tender. Since the jury found otherwise, it is only necessary to determine whether there was evidence on that point.

Witness McLachlin, who with his son and son-in-law constituted the lumber company which had attached the property, and who furnished the redelivery bond for the sheriff and who was authorized by him to tender back the property, testified:

"Mr. Morey (agent of the plaintiff) said, 'Can you come down to Chanute tonight?' I said, 'no, sir, not unless it is absolutely necessary.' He says then 'I have sold those rigs.' I said, 'I don't see how I enter into that in any way.' He said, 'yes, you are to furnish the money.' I said, 'No, Mr. Morey, I am not in the promoting business.' He said 'then we will have to litigate.' I said 'there is nothing to litigate, only a little bit of damages, if you have sustained any.' I said, 'if they are

your machines take them, I am not going to furnish you any money,' and he said 'no', and hung up the receiver; that is the last talk I had. . . .

"Q. If I understand you, Mr. McLachlin, the effect of your testimony is as follows: You had a talk with Mr. Morey over the long distance 'phone wherein he wanted you to do something in reference to these machines, and upon that condition he would take the machines back, and you refused to comply with that condition, is that the idea? A. That was it, I suppose; that is the proper construction. . . .

"Q. Now, he said that unless you would furnish the money that you would have to litigate over this question? A. Yes, sir.

"Q. Now after this re-delivery bond was given and you commenced to look into the matter you was willing to give up the property if you would be released of any damages; that is the idea was n't it? A. Yes, we did n't want to be damaged and did n't want to damage anybody else.

"Q. But you was willing to give it up if you was relieved of damages? A. That is part of the truth.

"Q. What is there else about it? A. We was not wanting to damage anybody else.

"Q. And you did n't propose to pay any damages? A. If they had anything that they could use their machines for, we wanted them to take them.

"Q. And you kept the machines? A. No, sir.

"Q. What did you do with them? A. I don't know. . . .

"Q. Although you knew that he had n't accepted your proposition? A. I did n't consider that we had anything to do with them; I had made the tender, I could not force him to accept. . . .

"Q. General Boyle said, if you complied with their terms; was there any terms in your tender to them of this property? A. The terms that I would have to furnish the money to pay for these machines.

"Q. You did n't catch the point. The proposition was this, Mr. Boyle suggested that the theory of the tender was, that if you was to relieve them from damages that you would tender the machines, to relieve the company of damages; was there any such a proposition as that mentioned? A. No, sir, no proposition of that kind.

"Q. What did you tell them about the damages? A. I told them the damages, that they had not sustained any; the machinery was lying idle over there, and it was not but a few days; I said, 'it is bad enough for us to lose our debt, if you can convince a judge and jury that you have sustained damages we are ready and able to pay for them.'

"Q. There was not any terms to that tender to them? A. Not a bit of it."

This is not all the evidence on the subject of tender, but it is enough to show that it was not error to refuse a peremptory instruction that defendant had made no legal tender of the property.

2. The foregoing disposes also of plaintiff's second assignment of error. The evidence was sufficient to permit its

submission to the jury; and, following the usual rule, the jury's finding and the trial court's approval end that phase of the controversy. ·

3 and 4. In the court's instructions were the following:

"4. One of the defenses offered by the defendant in this case is that a tender of the property involved in the action was made to the plaintiff before the beginning and after the beginning of this action.

"You are instructed that to constitute a legal tender of the property in question, it was necessary that an offer of all of the property involved in this action be made to the plaintiff, or to some one duly authorized to act for the plaintiff, and without any conditions attached thereto. It is not a sufficient tender to say to the agent 'go out and get this property that your company owns, but while you are getting it don't take any that don't belong to you, and if you do take any that don't belong to you we will expect your company to answer to us.' Neither is it sufficient that an offer be made to the plaintiff of the property, coupled with a proposition to release the defendant from any liability. In other words, in order to constitute a sufficient tender there must have been an unconditional offer of all of the property involved in this action to the plaintiff, or some one legally authorized by it to accept such an offer.

"7. You are instructed that if you find from the evidence that the defendant tendered to the plaintiff as above explained, the property involved in this suit, but that the plaintiff did not accept such property, the defendant then would not be justified in abandoning said property, unless such tender was made under such circumstances that the defendant had a right to expect the plaintiff to take charge of said property. Having taken possession of such property under the writ of attachment and having executed to the plaintiff a re-delivery bond for the same, in this case it was the defendant's duty to use reasonable care in preserving said property and protecting it from loss or damage, unless the plaintiff either took possession of the property under the tender or that such tender was made under such circumstances that the defendant would have reason to believe that the plaintiff would take charge of said property."

The chief objection to each of these instructions is said to be "that there was no evidence upon which to base such an instruction." If that were the only fault with the instructions, it would not constitute prejudicial error. It would be necessary to go further and show that the injection of irrelevant instructions had affected the plaintiff's substantial rights and that a wrong judgment had been secured which was traceable to such irrelevant instructions.

"Under the command of the codes, civil and criminal, and the authority of precedent for over half a century, we are prohibited from reversing judgments for mere technical errors or irregularities which do

not affirmatively appear to have prejudicially affected the substantial rights of the party complaining when it appears upon the whole record that substantial justice has been done." (*Root v. Packing Co.,* 94 Kan. 339, 345, 147 Pac. 69.)

But there was evidence on which to base the criticised instructions. Moreover, the fourth instruction is strongly favorable to appellant, perhaps too much so, for we do not see that a tender of the property in dispute coupled with a warning against taking other property would detract from the validity or sufficiency of the tender. The seventh instruction is a precise summary of the law relative to this case. (Hunt on Tender, §§ 273, 276, 391, 392, 449; 38 Cyc. 143, 144, 151.) In 38 Cyc. 151, it is said:

"If the article is ponderous, the tenderer before the day of tender must ascertain from the tenderee where he will receive it; and if the creditor cannot be found, or if he refuses to appoint any place, or to appoint a reasonable place, the debtor may himself select any suitable and reasonable place and make a delivery there, with notice to the creditor, if he can be found."

In this case, the location of the property had never been changed. Wherever it was placed by the owner was presumably an appropriate place, and there the owner was free to recover it on defendant's tender as found by the jury. While it remained in possession of the sheriff and under his responsibility, he kept it exactly as it had been kept by the owner; and, after a sufficient tender, the possession, actual and constructive, again vested in the owner, and a right result appears to have been attained in this lawsuit.

There is a suggestion that the evidence of McLachlin touching his conversation with Morey, the plaintiff's agent, was inadmissible since Morey had died before the trial. No formal assignment of error is based on this, but its admission was not error. (*Bank v. Sams,* 96 Kan. 437, 441, 152 Pac. 28.)

The judgment is affirmed.