No. 20,938.

H. W. BARBER, *Appellee*, V. JONAS D. EMERY et al. (W. F. METZ, *Appellant*).

### SYLLABUS BY THE COURT.

1. PARTNERSHIP—*Liability of Each Partner.* One who is a partner of a business firm may not escape his liability as such partner merely because he declares that he will not be responsible for the partnership acts, when he does nothing to alter the business conduct of the partnership, and remains a member of the firm, and suffers it to continue the policy to which he objects.

2. BANKS—*Overdrafts—Construction of Statute.* Section 3471 of the General Statutes of 1915, which makes it unlawful to draw a check or draft on a bank when the drawer has neither money nor credit in such bank, does not apply to the drawing of an overdraft by a customer who has credit at that bank.

3. SAME—*Overdrafts—Not Unlawful to Honor.* Section 558 of the General Statutes of 1915, which declares that any officer of a bank who honors an overdraft shall be personally liable to the bank therefor, is a precautionary measure of security for the bank, but it does not render the transaction itself unlawful.

4. TRIAL—*Disobedient Witness.* Where a trial court has ordered the witnesses to withdraw from the courtroom, a witness who disregards that order may be disciplined by the court, but his disobedience to the order does not disqualify him as a witness. (*Davenport v. Ogg*, 15 Kan. 363.)

5. SAME—*Excluded Evidence.* Certain excluded evidence examined and held to be of such slight relevancy to the issue that its exclusion was nonprejudicial.

6. SAME—*Misconduct of Jury.* It is error for a jury to consider facts pertinent to the issues volunteered by one of their number in the jury room; but where it is both affirmed and denied by the jurors that such incident occurred the question whether a juror did commit such impropriety must be determined by the trial court, and its finding that the incident did not transpire can not ordinarily be questioned on appeal.

7. SAME—*Instructions.* Prejudicial error can not ordinarily be based upon an instruction which is only subject to an objection that it is somewhat incomplete as an abstract statement of law, when it was not a necessary instruction to be given; and when no error in the result can be traced thereto.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed July 7, 1917. Affirmed.

*Max Anderson, C. L. Kagey,* both of Beloit, *L. S. Ferry, T. F. Doran, M. F. Cosgrove,* all of Topeka, *Homer Kennett,* and *Olin Hunter,* both of Concordia, for the appellant.

*Park B. Pulsifer, Charles L. Hunt,* and *Clyde L. Short,* all of Concordia, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal questions the correctness of a judgment in which W. F. Metz was subjected to liabilities as a member of the partnership firm of J. D. Emery & Company, a concern engaged in the poultry produce business in Concordia. The action involves two counts—one relates to an overdraft in the checking account of J. D. Emery & Company in a Concordia bank, and the other pertains to a promissory note of Jonas D. Emery and W. F. Metz in favor of the same bank. The plaintiff is the cashier of the bank, and the overdraft claim and the note were assigned to him. Plaintiff alleged that the firm of J. D. Emery & Company was composed of Jonas D. Emery and W. F. Metz, as partners.

Metz denied that he was a partner, and alleged that he had signed the note as surety for Jonas D. Emery.

At the trial it was agreed by the parties that the questions whether Metz was a partner of Emery and whether Metz was a principal or surety on the promissory note should be submitted to a jury, and that the other questions which might need consideration should later be determined by the court.

The jury found specially that Metz was a partner of Emery and a principal on the note. The court then examined the state of the accounts between the plaintiff's bank and the partnership and found a liability against Metz. It also made special findings:

"First. The court finds that on or about the 27th day of December, 1913, and a few days later, or early in January, 1914, the defendant Metz did say to the plaintiff Barber that he would not stand for Emery & Company's overdrafts.

"Second. The court further finds that notwithstanding said statements of defendant Metz to plaintiff Barber, he permitted the partnership of Jonas D. Emery & Company to continue for more than a year thereafter and permitted the managing officer of said company to deposit and check on said account and create overdrafts therein."

A third finding of the court analyzed the bank's account with the partnership.

Defendant's first contention reads:

"The principal issue in this case in this court is as to whether appellant, W. F. Metz, was ever a partner in the firm of J. D. Emery & Co., and whether, even if he was a partner, he is liable on the account sued upon in the first cause of action in the amended petition of appellee Barber."

·.There was no lack of evidence to prove the fact of partnership. Metz insists that his only interest in the firm of J. D. Emery & Company was to save himself harmless on his undertaking as surety on Emery's note at the bank; that his occasional examination of the books of the firm, his advice to the employees when Emery was absent, his conversation with the bank cashier, etc., were all prompted and only prompted on that account. The facts and circumstances are consistent with that theory; but they are also consistent with the theory that his lively solicitude in the affairs of J. D. Emery &.Company was that of a partner. This court is compelled to acquiesce in the trial court's determination of that proposition.

But it is urged that even if Metz was a partner of Emery, he would not be liable to the bank nor to the plaintiff after notifying them in December, 1913, and again in January, 1914, that he would not stand for any overdrafts of J. D. Emery & Company. This contention might be good but for the court's second finding, that notwithstanding these notifications Metz permitted the partnership to continue for more than a year thereafter, and permitted Emery, the manager of the partnership, to conduct the financial relations of the firm with the bank as theretofore. It is not shown that he withdrew from the partnership or caused anything to be done to change the methods of the partnership business in the matter of overdrawing its bank balances. Surely the continuation of partnership without alteration in its methods and Metz's long acquiescence in what his partner was doing amounted to ratification. (*Bank v. Schulman*, 89 Kan. 182, 131 Pac. 559.)

Our attention is next directed to section 3471 and section 558 of the General Statutes of 1915. The first of these is the statute forbidding the drawing of checks or drafts on a bank in which the drawer has neither funds nor credit. But that

statute has no application to this partnership since it had credit at the bank. The overdrafts were drawn on the strength of that credit.

Neither is the defendant's liability affected by the banking regulation (§ 558) which imposes a personal liability upon any banking official who pays out the bank's funds on an overdraft. That provision is simply an element of security to the bank in such transactions, and designed to make banking officers cautious about permitting customers to overdraw their accounts. It will be noted that neither section 3471 nor section 558 positively denounces overdrafts under all circumstances. (*Saylors v. Bank,* 99 Kan. 515, 518, 163 Pac. 454.)

Another error assigned relates to the exclusion of testimony of the defendant's wife offered in surrebuttal. The court had ordered the witnesses to withdraw from the court room. Mrs. Metz remained, and upon inquiry the court was advised that she was not a witness. This was not a valid reason for excluding her evidence, although she might have been disciplined for disobedience of the court's order. (*Davenport v. Ogg,* 15 Kan. 363; *The State v. Falk,* 46 Kan. 498, 26 Pac. 1023.) But the proffered evidence was of decidedly minor materiality. Mrs. Metz would have testified that in May, 1912, many months before the J. D. Emery & Company firm was established, Mrs. L. E. Emery, the wife of Jonas D. Emery, had called Mrs. Metz by telephone concerning an erroneous deduction in balancing accounts between Metz and Emery and that she, Mrs. Emery, owned the Emery produce business, and that all payments by Metz for produce sold to him by Emery should be made to her; that Mrs. Metz was so advised by Mrs. Emery several times, and that several checks were so made to Mrs. Emery during the summer of 1912. Counsel say Mrs. Metz's evidence was offered to contradict the evidence of Mrs. Emery. The latter had been asked if she had told Mr. Metz that she was a partner in the business or if she constituted the company and she answered in the negative. On cross-examination—

"Q. Do you remember an occasion when she kept out something like $80 on a check for an account of J. D. Emery at Glen Elder that he owed, and you came down there and had a conversation with her, or rather had a conversation with her over the phone, in which you told

Barber v. Emery.

her she had no right to do that, that Mr. Emery had nothing to do with it; that that produce business was your business? A. I did not tell her—"

[COUNSEL FOR APPELLANT.] "We object to this as not proper cross-examination, we examined this witness solely in regard to conversation with Mr. Metz. It is incompetent, and not proper cross-examination."

THE COURT. "Sustained."

No issue had been raised that Mrs. Emery was a partner or owner of the Emery business before the formation of J. D. Emery & Company. But whoever were also partners or owners before J. D. Emery & Company was organized, or even after its organization, the sole issue of importance was whether Metz was a partner after its organization, not whether Mrs. Emery was a partner, nor did it matter who else were partners. There was no substantial error in excluding Mrs. Metz's testimony.

On the motion for a new trial, the affidavits of two jurors were presented which narrated an alleged incident in the jury room. In part, they read:

"That Juror J. M. Sanger repeatedly stated in the presence and hearing of the other jurors that he, the said Sanger knew that the said Jonas D. Emery and W. F. Metz, defendants, were partners, that he was a brother-in-law of McKnight, and that he had talked with the said Dick McKnight, who was a witness in the said case, and that McKnight had told him, the said Sanger, that said Emery and Metz were partners, and that this affiant and the other jurors considered said statements of said Sanger in arriving at their findings and answers to the questions submitted, and would not have so answered them if such statements had not been made by said Sanger and if they had not relied upon such statements. That prior to the time of the making of said statements by the said Sanger this affiant had voted to answer the question as to partnership in the negative."

Plaintiff objected to these affidavits.

"The Court: I will overrule the objection for the time being, and you may present your counter affidavits.

[Counsel for plaintiff]: "On this hearing the plaintiff presents the [counter] affidavits of four of the jurors relative to the matter set out in the affidavits of Domino and Chaput. . . . and being four of the jurors who sat in the trial of the case."

Plaintiff renewed his objection:

"The Court: The objection is sustained and none of the affidavits of the jurors will be received in evidence, and the court will say further that if the affidavits presented by the defendant were competent that

the court would find that the weight of the evidence was in favor of the plaintiff, by reason of his counter affidavits."

This court is of the opinion that this was a proper subject for presentation on the motion for a new trial. For the jury to consider independent facts, unsifted as to their accuracy by cross-examination, and unsupported by the solemnity attending their presentation on oath before judge, jury, parties and bystanders, and without an opportunity to contradict or explain them can never be countenanced. But the question whether such an episode transpired in the jury room had to be resolved as are all other facts subjected to judicial inquiry, and the ruling by which the affidavits were excluded followed an examination of the affidavits and the ruling was coupled with a finding that the court would find against the defendant on the weight of the evidence if put to a positive determination of the matter. Taken together there was no more than a preliminary wrong ruling followed by an unassailable result. (*Saylor v. Crooker*, 97 Kan. 624, syl. ¶ 4, 156 Pac. 737.)

Touching the draft for $1400 deposited December 31, 1914, perhaps after banking hours, which was credited on January 2, 1915, January 1 being a bank holiday, nothing can be discovered requiring discussion.

Error is assigned on an instruction given to the jury, to the effect that even though two persons are not partners they may nevertheless be subjected to liability as such by holding themselves out as such to third parties, and by acts and representations to that effect. There is little room for criticism of this as an abstract statement of the law, although to perfect the liability it would need to be shown that the third parties seeking to enforce it had acted to their detriment on account of such holding out, acts or representations. But the jury found that there was an actual partnership, and Metz's liability is based on that fact, and not on any theory of estoppel founded on the misleading of third persons by his acts, representations or mere holding himself out as if he were a partner. At most the instruction was unnecessary but no error can be traced to the giving of it. (*Manufacturing Co. v. Redd*, 97 Kan. 1, 5, 154 Pac. 250.)

In a supplemental abstract and brief counsel for defendant direct our attention to the transcript, and to the pass books,

and reiterate their contention that there was no evidence tending to show that Metz ratified the continuance of the firm's practice of overdrawing its account. We have not overlooked these matters so urgently pressed. But ratification may be shown by circumstances, by acts, and also by continued inaction. Nothing can be detected in this appeal which would warrant this court in disturbing the judgment.

Affirmed.