No. 30,461.

IDA M. BRYANT, *Appellee*, v. RUTH E. MARSHALL, *Appellant*.

(10 P. 2d 868.)

Opinion filed May 7, 1932.

*John L. Connolly* and *Douglas Hudson,* both of Fort Scott, for the appellant.

*James G. Sheppard,* of Fort Scott, and *John A. Hall,* of Pleasanton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by a mother against her daughter to recover damages caused by the alleged negligence of the latter, whereby an automobile in which they were riding went into a ditch by the roadside, with the consequence that the mother was severely and permanently injured.

For some two or three years prior to October 6, 1929, the daughter; who was married and had two small children, resided with her parents in Fort Scott. In August of that year she purchased an automobile—a five-passenger sedan—with $200 of her own money and $800 given by her father for that purpose. The mother and daughter commonly used the car together. The mother was sixty-two years old and somewhat incapacitated by a rheumatic affliction from which she had suffered some years previously and which had permanently enlarged and stiffened her joints, knees, ankles and hands. She was also very deaf and required a speaking tube in conversation. She was able, however, to do the family housework and took care of her two grandchildren. The daughter had employment outside the home.

On the morning of October 6, 1929, the mother and daughter and the two children left Fort Scott to visit relatives in Baxter Springs, about sixty-six miles away. The daughter was at the wheel with one of the children beside her. The mother and the other child occupied the rear seat. The automobile made a rapid trip and when they were traveling on an east-bound road about two miles from Baxter Springs, the daughter took one hand off the wheel and reached into a satchel beside her, drew therefrom an open-faced watch and held it over her right shoulder for her mother to see and glanced around at the same time. The mother noticed the time of day and remarked, "Umhuh, we will soon be there." At that instant the car commenced to skid to the left, got back into the road, started over to the right at full speed, and plunged into a ditch and capsized. After the accident the right front tire was found to have a three-and-a-half inch cut in it. Plaintiff's son testified that it did not look like a "blow-out," and plaintiff sought to have the jury draw an inference that the tire was cut by a snag after the car went into the ditch. At the place of the accident the road, U. S. highway No. 166, was thirty feet wide and covered with chat. There were some chat piles by the roadside and some loose chat on the road.

The mother brought this action against the daughter, narrating the material facts. In plaintiff's amended petition she alleged that—

"The said defendant negligently operated said automobile at a reckless and careless and dangerous rate of speed, considering the condition of the road and the traffic.

. . . . . . . . . . . . . . .

"That the defendant, while driving such automobile, negligently took her right hand from the steering wheel while driving and with it opened a hand

satchel and took therefrom a watch and looked at such watch and thereupon negligently held such watch in her right hand above her right shoulder and thereby negligently diverted her attention from the driving of such automobile, and while negligently driving such car in such manner and upon the road which was in the condition hereinbefore described, negligently allowed such automobile to get out of her control and negligently caused such automobile to turn into the ditch on the right-hand side of such road, and by reason and on account of said negligent and careless operation of said automobile by said defendant said automobile was overturned and plaintiff sustained the following injuries."

Plaintiff's petition then set out her injuries and consequent doctors' and hospital bills, and prayed judgment in damages for $20,877.69.

On behalf of the defendant daughter an answer was filed in which negligence was denied, plaintiff's contributory negligence was pleaded, and it was alleged that plaintiff and defendant were engaged in a joint enterprise.

The cause was tried by a jury. The facts shown in evidence were substantially as stated above. Some rather uncommon matters were incidentally developed at the trial; for instance, that this lawsuit for this large sum of money made no change in the amicable attitude of mother and daughter. They continued to reside together. When the mother's lawyers called to discuss the case with their client in preparation for this lawsuit the defendant daughter used the speaking tube to tell her mother what the lawyers had to say. The defendant also went to the scene of the accident and sprinkled flour on the automobile tracks so that a photograph might be taken for plaintiff's use as evidence in this action to recover damages for her own negligence. Another significant matter was brought out at this trial. There had been a previous trial and a verdict for plaintiff, which had been set aside. At the second trial it was brought out in the evidence that in that first trial the incident about defendant getting the watch out of her satchel and showing it to her mother and the mother's responsive remark thereto was not pleaded nor was any evidence or intimation concerning it developed.

The jury returned a verdict for $10,000 in plaintiff's favor and answered certain special questions:

"Q. 4. Was the plaintiff riding in the car at time of injury without making any protest at the manner in which the car was being driven? A. Yes.

"Q. 5. If you find in favor of plaintiff, state upon what ground or grounds of negligence you so find. A. Taking hand off wheel and eye off road.

"Q. 6. Did the plaintiff without protest coöperate with defendant in whatever was done in connection with the watch, so as to apprise plaintiff of the time of day? A. Yes.

"Q. 7. What caused the car to swerve on the road, immediately preceding the injury? A. Taking hand off wheel and eye off road."

Defendant's motion for judgment on the special findings was overruled; likewise plaintiff's motion to set aside the jury's answer to special question No. 6.

Defendant then filed a motion for a new trial because of various matters, including misconduct of the jury. The misconduct complained of arose from the act of one of the jurors who clipped a news item appearing in a current issue of a local newspaper and carried it into the juryroom. The newspaper article read:

### "TRYING CASE AGAIN.

"SECOND TRIAL OF SUIT OF MRS. BRYANT AGAINST DAUGHTER IS ON;
"GOT JUDGMENT FOR INJURIES.

"The second trial of the suit of Ida M. Bryant against her daughter, Ruth Marshall, for damages for injuries received by her as a passenger in Mrs. Marshall's car when it overturned near Baxter Springs, Kan., some time ago, was under way to-day in district court. Mrs. Bryant at the first trial secured judgment for $10,000, but Judge Charles F. Trinkle sustained a motion for a new trial filed by Mrs. Marshall's attorneys.

"Mrs. Marshall carried liability insurance on her car, to protect her in case of claims against her due to accident. Mrs. Bryant claims she is entitled to receive compensation from this insurance."

Seven of the jurors made affidavits that the article was read to the jury and passed from hand to hand among them, and that the matters narrated in the article were discussed by the jury in the course of their deliberations. There was no showing by plaintiff to counteract or minimize the gravity of this incident.

The motion for a new trial was overruled and judgment was entered for plaintiff.

Defendant appeals, urging certain errors, the first of which relates to defendant's contention that no negligence was shown and 'that plaintiff's motion for judgment should have been sustained. The negligence of defendant as found by the jury was that of "taking hand off wheel and eye off road." Defendant contends that the act of taking one hand off the steering wheel, picking up a watch and holding it over her shoulder and glancing back to see if her mother was observing the time did not constitute negligence. It is also

urged that the highway at the place of accident was a wide, smooth, well-graded chat road, and that there was no other traffic on the highway thereabout at the time of the accident. But the mother testified that the chat on the road was loose, and that there were piles of chat by the roadside; and it was shown that the automobile was "going pretty fast." It was at the very instant when defendant had taken one hand off the wheel and was glancing back at her mother the car began to swerve first to one side of the road and then the other. In view of these considerations, the question whether "taking one hand off the wheel and eye off road" was negligence under the circumstances was a jury question and not open to our decision as a question of law. (3-4 Huddy Encyc. Automobile Law, 9th ed., § 68; Notes in 5 A. L. R. 1240, 12 A. L. R. 668, 64 A. L. R. 255.)

Defendant also contends that if the daughter's act of taking hand off wheel and eye off road constituted actionable negligence, the jury's special findings of fact convict the mother of contributory negligence. The jury found specially (finding No. 6) that plaintiff coöperated with defendant, without protest, in whatever was done in connection with the watch so as to apprise plaintiff of the time of day. Plaintiff moved to set that finding aside, but that motion was overruled. That ruling makes it apparent, as it seems to us, that without that special finding the trial court would not have approved the general verdict nor have entered judgment thereon. The "coöperation" of the mother, as found by the jury, was a very simple, natural act, but so, too, was the act of the daughter, yet the jury found that the daughter's act was negligence; and since it was so characterized a majority of this court hold that the coöperating act of the mother must similarly be construed as contributory negligence.

This last conclusion might render it unnecessary to deal with the error assigned on the misconduct of the jury, but some of the justices think we should rule on it.

In *Fields v. Dewitt*, 71 Kan. 676, 81 Pac. 467, a verdict was attacked because certain local newspaper articles purporting to discuss the merits of the case from a point of view distinctly unfavorable to the appellant had been published during the trial, but it was not shown, as here, that the jurors had read them during the course of the trial; and this court ruled:

"To support an application for a new trial upon the ground of the mis-

conduct of jurors it is not sufficient to show that during the trial they read newspaper comments relating to the case, without showing also that the comments were of such a character that they might have resulted in prejudice to the losing party." (Syl. ¶ 2.)

In the course of the opinion, however, it was said:

"Several of these articles were of such a nature that perhaps the reading of any one of them by a member of the jury before verdict would of itself have furnished good ground for a new trial." (p. 677.)

In *Barber v. Emery*, 101 Kan. 314, 319, 167 Pac. 1044, in discussing an incident said to have transpired in the jury room, this court said:

"For the jury to consider independent facts, unsifted as to their accuracy by cross-examination, and unsupported by the solemnity attending their presentation on oath before judge, jury, parties and bystanders, and without an opportunity to contradict or explain them, can never be countenanced."

In 46 C. J. 152 it is said:

"It is ground for a new trial that the jury, in arriving at their verdict, considered . . . documents or papers not in evidence of a character that might have influenced the verdict. . . . If papers improperly considered by a jury were material or fitted to prejudice the unsuccessful party, a new trial should be granted, although the successful party was not at fault. Nor will the actual measure of influence of such papers be inquired into."

On the same subject, in 16 R. C. L. 302, it is said:

"But where a paper capable of influencing the jury in favor of the prevailing party was improperly in the jury room during the deliberations of the jury, and was read by the jurors, the verdict will be set aside, although the jurors may think they were not influenced by the paper. And the presumption is that a paper improperly in the jury room was read wholly or in part by the jurors."

See, also, *McKibben v. Philadelphia & R. Ry. Co.*, 251 Fed. 577; *Dartnell v. Bidwell*, 115 Me. 227, 5 A. L. R. 1320; *Guntzer v. Healy*, 163 N. Y. S. 513.

Whether the newspaper clipping was actually taken into the jury room and discussed by the jurors, or read by some of them, as stated in the affidavit of the jurors, was a question of fact (*Fidler v. Short*, 118 Kan. 37, 40, 233 Pac. 1022), but in this case there was no testimony offered to controvert those affidavits. And while counsel for plaintiff argue that such incidents are unavoidable in a jury trial, and that jurors generally know that most people carry insurance to protect them in automobile damage suits, yet counsel do not suggest that the facts were not as stated in these affidavits. And while jurors may not be heard to state what evidence, inci-

dents, motives, course of reasoning, or conclusions induced them to arrive at their verdict (*Ohlson v. Power Co.*, 105 Kan. 252, 182 Pac. 393; *Matthews v. Langhofer*, 110 Kan. 36, 202 Pac. 634; *State v. Johnson*, 129 Kan. 207, 209, 283 Pac. 723), they may testify as to what did or did not transpire in the jury room. (*Perry v. Bailey*, 12 Kan. 539; *State v. Storm*, 74 Kan. 859, 86 Pac. 145; *Taylor v. Abbott*, 85 Kan. 198, 115 Pac. 979; *Clark v. Brady*, 126 Kan. 59, 62, 266 Pac. 740; Dassler's Kan. Ann. Civ. Code, 1378 *et seq.*)

The important question in a motion for a new trial based upon the misconduct of the jury is to determine whether the complaining party was probably prejudiced by such misconduct. It seems to us that the statement in the newspaper article that the daughter carried automobile insurance and that the mother wanted compensation therefrom was bound to have a prejudicial effect. That statement would illuminate the otherwise mystifying situation which the case presented. Here was a mother suing her daughter for the large sum of $20,877.69 for the alleged tortious act of the daughter. Nevertheless they continued to live cordially together in the same house. The daughter had to work outside the home, and it would take a long time to earn the money to pay so large a sum as that sued for. Another intriguing feature of the evidence was that the daughter served as interpreter when lawyers called to confer with the mother on matters relating to the lawsuit. The daughter rendered assistance in the taking of photographic exhibits to be used in evidence against herself. But this unique attitude of the litigants would become quite understandable to the dullest juror when that newspaper clipping was read in the jury room. If an insurance company and not the daughter who had to work for a living was the party to whom the mother was really looking for compensation for her injuries, it would not be unusual for the jury to render a handsome verdict, supposing, as they were bound to do, that it was only colorably rendered against the defendant.

Moreover, the information gleaned by the jurors from the newspaper article, in our view, goes far to explain the jury's characterization of defendant's momentary act of "taking hand off wheel and eye off road" as negligence. This court holds that the incident of the newspaper clipping in the jury room constituted prejudicial misconduct on the part of the jury. This whole record also makes it rather clear, in our opinion, that the "coöperation" of plaintiff and defendant was not limited to the incident covered by the jury's

sixth finding of fact. That special finding, however, conclusively settles this lawsuit.

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.