No. 40,473

EUGENE RANDLE, NEDWIN RANDLE and ERNEST R. RANDLE, Co-Part-
ners, d/b/a RANDLE BROTHERS, *Appellees,* v. THE KANSAS TURN-
PIKE AUTHORITY, *Appellant.*

(312 P. 2d 235)

Opinion filed June 8, 1957.

*J. Ashford Manka,* of Wichita, argued the cause, and *Robert M. Cowger* and
*Thomas Cunningham,* both of Topeka, and *Clifford L. Malone,* of Wichita, were
with him on the briefs for the appellant.

*E. P. Villepigue,* of Wichita, argued the cause, and *I. H. Stearns,* of Wichita,
was with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This is an appeal in a condemnation proceeding from
a trial court's judgment in favor of the landowners and against the
Kansas Turnpike Authority.

For convenience and clarity the landowners will be referred to as
the Randles and the Kansas Turnpike Authority as the Authority.

The land in question consisted of 160 acres on the south side of
Central Avenue (formerly U. S. highway 54) in Sedgwick county;
it was bounded on the east by a county road which was six miles
east of the city of Wichita. As soon as they acquired the land in
1947, the Randles had begun using it for raising and training grey-
hound dogs. They had made improvements and constructed a num-
ber of buildings including several with concrete block walls eight
feet high and concrete floors which were adaptable only for dog

kennels. They had installed woven wire pens and fences and had built an oval coursing park for racing the hounds as well as two large ponds in which the hounds were cooled after exercising. They had also had some purebred cattle but they used pre-existing buildings for this activity which was not carried on as a dairy business.

On April 7, 1955, the Authority under its eminent domain power (G. S. 1955 Supp. Chap. 68, Art. 20) began a condemnation proceeding for turnpike purposes of a strip of land 300 feet wide beginning at the southwest corner of Randles' property, proceeding diagonally toward the northeast and leaving the property a short distance south of the northeast corner of Randles' land. This tract contained 22.44 acres. Additional parcels were taken for drainage, borrow-pits and raising the county road grade to permit a twenty-two foot high overpass over the turnpike, which increased the total to 29.03 acres. At the northeast corner of the land the grade of the county road commenced to rise five feet in each 100 foot length until a maximum height of twenty-two feet was reached over the turnpike. Then it slanted down in the same ratio to the original grade 1400 feet south of the northeast corner. After the taking Randles' remaining land consisted of two triangular-shaped pieces; there were 84.5 acres in the tract to the northwest of the turnpike and 46.47 acres southeast of the turnpike. A stock underpass with right-of-way fence pulled in to provide access between the two pieces of land was provided. A four-acre pond was obliterated and the dam on a two-acre pond was pushed back by the turnpike right of way.

One of the Randles testified their fixtures and buildings had been sold at public auction because the land could no longer be used as a racing greyhound farm; the land used for that purpose or for subdivision was worth $2,000 per acre before the taking on April 7, 1955; remaining land in the 84.5 acres was worth $500.00 per acre and the 46.47 acres were worth $100.00 per acre after the taking. He further testified the adjacent and surrounding lands were used as follows: On the north for farming; east for a horse-stable; southeast for subdivision; south for farming; southwest for farming; and west for a hay meadow.

Expert evidence on behalf of the Randles set a fair and reasonable market value of the land based on its best and most advantageous use for subdividing at $1,500 per acre before the taking and thereafter on the 84.5 acres at $500 per acre and on the 46.47 acres at $300

per acre, making a total damage of $183,809. They also located a subdivision at the southest corner of the Randles' land and others within a radius of from two to four and a half miles.

Evidence on behalf of the Authority by four expert witnesses, who used different methods of computation, indicated they arrived at the total damage in these varying amounts: $46,515, $43,790, $48,592.50, and $47,975. Thus it can be seen there was a marked dispute in the evidence as to the value of the land when the case was submitted to the jury.

Instructions requested by the Authority, as well as all of the court's instructions, were fully abstracted in the record. The court also submitted special interrogatories to the jury for its answers, which were as follows:

"1. What do you find to be the fair and reasonable cash market value of the 160 acre tract of land owned by Eugene Randle, Nedwin Randle and Ernest R. Randle on April 28, 1955, before any portion thereof was taken for the Kansas Turnpike? A. $216,000.00.

"2. What do you find to be the fair and reasonable cash market value of the 29.03 acres of land taken for the Kansas Turnpike on April 28, 1955? A. $39,190.50.

"3. What do you find to be the fair and reasonable cash market value of lands not taken for the Turnpike, owned by Eugene Randle, et al., as of April 28, 1955?

"(a) 84.5 acres Northwest of the Turnpike:

"(1) Immediately before the taking of 29.03 acres for the Turnpike? A. $114,075.00.

"(2) Immediately after the taking of 29.03 acres for the Turnpike? A. $71,825.00.

"(b) 46.47 acres Southeast of the Turnpike:

"(1) Immediately before the taking of 29.03 acres for the Turnpike? A. $62,734.50.

"(2) Immediately after the taking of 29.03 acres for the Turnpike? A. $27,882.00."

The above-answered special questions and a general verdict for $116,293 were returned to the court by the jury.

A motion for new trial was filed by the Authority. Evidence was introduced at the hearing of this motion but it was overruled and judgment in the sum of $116,293 was entered in favor of the Randles. The Authority appealed from this judgment assigning four rather lengthy and detailed specifications of error.

During the first day of trial the following article appeared in the Wichita Beacon dated May 1, 1956:

"Another Pike Case Goes to Jury on Appeal

"Another in a series of Kansas Turnpike right-of-way condemnation appeals was to be heard by District Judge B. *Mac* Bryant Tuesday.

"The property in question, owned by three brothers, Eugene, Nedwin and Ernest *Rande*, located at 14131 E. Central, involves six tracts which have been appraised at $50,781.

"The property represents facilities for the training of racing hounds by the three brothers.

"A jury will be asked to review the appraisal."

The following article appeared in the Wichita Evening Eagle dated May 1, 1956:

"Jurors to Hear Pike Appeal

"Appraiser's Award

"Basis of Action

"A District Court jury panel was selected Tuesday morning in Judge B. Mack Bryant's Court to hear the second appeal of a Kansas Turnpike condemnation award.

"In this hearing, Eugene, Nedwin and Ernest R. Randle, 14131 E. Central, are appealing the appraisers' award for land taken by the KTA right-of-way and for damages to the remainder of the Randle property.

"J. Ashford Manka represents the KTA and I. H. Stearns and E. P. Villepigue represents the Randles.

"The Turnpike crosses the Randle property in an oblique line dividing the land into almost two equal parts. Six plots of land are involved in the appeal totaling 29.75 acres.

"The Randles, racing greyhound breeders, are the second party to place their appeal before a jury.

"In the first appeal before a jury, G. M. Fisher won a higher award. Fisher, who owns property to the north of the Randles, was given $8,000 more than the original appraisal."

Prior to the convening of court on the morning of the second day of trial the Authority moved for a mistrial because these newspaper items were prejudicial fact statements which were not admissible and could not have been introduced as evidence. The trial court overruled this motion and the Authority complains thereof, but we can find nothing in the record that would justify any other ruling than the one made by the trial court.

On the hearing of the motion for new trial three jurors testified. One of them had cut out the news item from the Wichita Evening Eagle and brought it to court with him the next morning, May 2, 1956, but he had neither displayed nor discussed it with anyone. However, after the case was submitted to the jury for its answers to special questions and determination of a verdict on May 4, 1956,

that juror had taken the newspaper item out of his pocket and had asked a fellow juror if he had read it. The second juror in turn read it and then a third juror also read it. Such conduct reflects adversely on our jury system for the reason that it may make possible a verdict not truly that of the triers of the facts, but a verdict influenced by the press, radio, and television. These news services have no place in a jury room while deliberations are going on. However, the particular article with which we are here concerned was not in and of itself of such caliber as to constitute prejudice and since the record does not show resulting prejudice to the losing party, it is not reversible error. (*Fields v. Dewitt,* 71 Kan. 676, 81 Pac. 467; *Pulkrabek v. Lampe,* 179 Kan. 204, 293 P. 2d 998.) The Authority cites *Bryant v. Marshall,* 135 Kan. 348, 10 P. 2d 868, where a mother sought damages based on negligence on the part of her daughter in an automobile accident. A reading of the Bryant case shows that all the elements necessary to constitute misconduct of the jury and resulting prejudice were present (p. 354) but, as stated above, that is not true here. Furthermore, this court is bound to keep in mind that part of G. S. 1949, 60-3317, which provides:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court. . . ."

The Authority complains that the trial court allowed one of the Randles to testify as to the market value of the land. We find very little help in the briefs on this point but our limited research has produced the rule that the owner of property is presumed to know its value and his opinion testimony concerning it is competent. (*Brenneisen v. Phillips,* 142 Kan. 98, 45 P. 2d 867; *Sternbock v. Consolidated Gas Utilities Corp.,* 151 Kan. 81, 98 P. 2d 162.) See, also, the rather recent case of *Steck v. City of Wichita,* 179 Kan. 305, 309, 295 P. 2d 1068, where a landowner's testimony was admitted. Long ago in *L. T. & S. W. Rly. Co. v. Paul,* 28 Kan. 816, 821, this question was discussed and the court, with a reservation as to the use of caution therewith, established a trend that opinion testimony of witnesses as to the value of land in condemnation appeals is admissible. From a realistic standpoint in our case, we cannot ignore the fact there were other witnesses who were def-

initely expert real estate brokers and the jury determined the reasonable market value of the land from all the testimony admitted and not upon merely the landowner's determination of the value.

Regarding a statement made by the trial court in ruling on an objection, which the Authority contends was prejudicial, the record fails to show any prejudice to the Authority thereby and we need not dwell thereon. It is further noted that the Authority claims it was unduly limited in the scope of its cross-examination of one of the Randles' expert witnesses. It cites *Bourgeois v. State Highway Commission*, 179 Kan. 30, 292 P. 2d 683, but the situation here is not comparable to the one that existed in the Bourgeois case. We think the rule stated in *Moore v. Kansas Turnpike Authority*, 181 Kan. 51, 310 P. 2d 199, that the question of the extent to which cross-examination of a witness to impeach his credibility will be allowed is discretionary with a trial court, is clearly applicable to our present case.

Contentions are raised by the Authority that counsel for the Randles made prejudicial remarks in his opening statement and argument to the jury. The record does not bear out these contentions and it is unnecessary to detail or discuss them here.

On the question raised in the lower court and also on appeal as to instructions requested by the Authority and the instructions given by the court, all of them have been considered and in respect to those requested, they were either given in substance in the court's instructions or they involved issues not in the lawsuit. The instructions given by the trial court were clear, unbiased, and not prejudicial when all are considered together and in the light of each other.

The Authority specifies the trial court erred in not granting a new trial upon evidence presented at the posttrial hearing. The newspaper clipping has been previously discussed herein and reiteration as to that is not necessary at this point. The evidence introduced as newly discovered was testified to by one of the Authority's experts at the trial of the case and by another well-qualified real estate broker of long standing in the community. It was to the effect that a comparable property consisting of 160 acres located a half mile south and a half mile east of the Randles' tract had, in the spring of 1955, been listed at a price of $100,000. During the ninety day period of listing, the property had not been sold although it had been advertised and shown to prospective pur-

chasers a number of times. This property was also listed at about the same time with one of the expert witnesses called by the Randles but his efforts or success in selling it were not shown since he was not re-called at the post-trial hearing.

While all or part of this testimony may have been proper in the original trial of the case (*Security Benefit Ass'n v. Swartz*, 146 Kan. 267, 70 P. 2d 16) we cannot now say a new trial should necessarily have been granted because of it. Considered in its best light, this testimony could rise to no higher degree of dignity than that of cumulative evidence which this court has many times held not to be sufficient to compel the granting of a new trial (*Turner v. City of Wichita*, 139 Kan. 775, 33 P. 2d 335) cited with approval in *Bentrup v. Biehn*, 171 Kan. 414, 417, 233 P. 2d 529. We are unable to believe, and the record has not convinced us, that the evidence produced on the motion was such that with reasonable probability it would produce a different result. The Authority propounds a very interesting argument that the testimony of one, if not all, the experts would have been different had the fact been known that the listed property had failed to sell, but should such a rule be adopted, there would be no end to litigation because if a new trial were granted, what would prevent the Randles from obtaining another new trial by the same method should they be dissatisfied with the outcome? This is not the law nor is it practical.

Another activity was brought out by some slips of paper found in the jury room but the record is void of any showing of a quotient verdict. The evidence of the juror who had first been shown the newspaper clipping further showed that the value of $1,350 per acre was brought up by the foreman and ultimately approved by the other jurors. This figure of $1,350 was nowhere to be found on any of the slips of paper. A new trial cannot be granted on this type of showing.

Was the verdict so excessive as to shock the conscience of the court? This case was well and thoroughly tried by able counsel on both sides, as reflected in the record. The experts were well-qualified and prominent real estate brokers. Everything was brought before the jury for its consideration and the greater portion of, if not an entire day, was spent by the jury in its deliberations. There was an abundance of evidence of the reasonable market value of the property together with its highest, best, and

most advantageous use, from and upon which the jury based its answers to special questions that were not only consistent with each other but were consistent also with the general verdict. The result is we do not deem it necessary to disturb the judgment. It is affirmed.