No. 39,033

PATRICIA ANN KAMINSKI, by and through her father and next friend, Julius Kaminski, *Appellee*, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, and W. R. SNODERLY, *Appellants*.

(259 P. 2d 207)

Opinion filed July 6, 1953.

*J. O. Emerson*, of Kansas City, argued the cause, and *Edw. M. Boddington* and *E. M. Boddington, Jr.*, both of Kansas City, and *Charles L. Carr*, of Kansas City, Mo., were with him on the briefs for the appellants.

*Thomas H. Finigan*, of Kansas City, argued the cause, and *George W. Thomas*, of Kansas City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action to recover damages for personal injuries sustained by plaintiff when the bicycle which she was riding

was struck by a bus owned and operated by defendant company. The driver of the bus also was made a defendant. The case has been here previously on a question of pleading (*Kaminski v. Kansas City Public Service Co.,* 171 Kan. 64, 229 P. 2d 759).

Our former opinion contains a brief summary of the allegations of the petition with respect to the facts and circumstances of the collision. Subsequent to that decision plaintiff amended in compliance with what was said in the opinion but the details of the amendments, for our purposes, need not be set out.

On the trial of the action the jury answered special questions and rendered a verdict for plaintiff. Defendants filed a motion for judgment on the special findings and a motion for a new trial. Both motions were overruled and judgment was entered upon the verdict and findings. Defendants have appealed, alleging numerous specifications of error, the first of which is that their demurrer to plaintiff's evidence was erroneously overruled.

In view of our disposition of this appeal it is unnecessary to detail plaintiff's evidence on the question of responsibility for the collision and as to the nature and extent of her alleged injuries. It is sufficient to say that we have carefully examined this evidence and are unable to say that defendants' demurrer thereto was erroneously overruled. It was of such nature that reasonable minds might reach different conclusions both as to the negligence feature and the matter of personal injuries. Such being the case, under the familiar rule to be applied in testing the sufficiency of evidence as against demurrer, it presented fair questions for a trier of the facts and the court did not err in its ruling.

Other assignments of error relate to the denial of defendants' motion for judgment on the findings, exclusion of evidence, erroneous instructions, passion and prejudice of the jury, the alleged grossly excessive verdict, and misconduct on the part of at least several jurors.

We proceed to a discussion of the last mentioned proposition.

On the *voir dire* examination of the jury counsel for defendants inquired whether any of the prospective jurors or members of their families had had any lawsuits or claims for personal injuries. Jurors Swanson and Karge replied in the negative. Both were allowed to sit as jurors in the trial. At the hearing on the motion for a new trial it was conclusively established that a few years prior thereto juror Swanson and her husband had filed in the district court of

Wyandotte County an action seeking to recover the sum of $10,000 for the wrongful death of their minor daughter.

It also was established at the hearing on the motion for a new trial that a few years prior thereto the husband of juror Karge had filed an action in the district court of Wyandotte County for damages arising out of an automobile collision. That case was settled upon payment of medical bills.

Additional misconduct on the part of certain members of the jury urged as a basis for a new trial is that at least one, and probably two or three, members of the jury, on their own initiative and without sanction of the court, during the trial, went to the scene of the collision, or in close proximity thereto, for the purpose of making calculations and measuring distances between certain points in the street. In fact, one juror, Karge, took measurements of the width of the street with a twenty-five-foot tape measure with her husband holding the other end of the tape. At the hearing and argument on the motion for a new trial numerous affidavits and counter-affidavits by jurors and persons who had interviewed them following the trial were submitted to the court. Some were to the effect the information as to measurements and distances obtained by these several jurors on their own initiative was not mentioned or discussed during the jury's deliberations. Other affidavits and oral evidence introduced were to the contrary. All of these affidavits and testimony have been read but we do not feel it necessary to detail the contents.

In our opinion there is no room for doubt but that the foregoing actions and conduct on the part of several members of the jury constituted such misconduct as to deprive defendants of the fair trial to which all litigants are entitled.

With respect to the concealment of facts by two of the jurors on their *voir dire* examination, this court had a similar question before it in *Harshaw v. Kansas City Public Ser. Co.*, 154 Kan. 481, 119 P. 2d 459, in which it was held that the evasion and concealment by a juror of the truth and fact concerning the filing of a similar suit for damages constituted such misconduct as to warrant the granting of a new trial.

*Kerby v. Hiesterman,* 162 Kan. 490, 178 P. 2d 194, is another recent case in which it was held that a false or deceptive answer by a juror on his *voir dire* examination pertaining to his qualifications to sit, is such misconduct as to warrant the granting of a new trial.

The facts and deception there were not as "strong" as those present here, but, nevertheless, it was held:

"When a prospective juror, on *voir dire* examination, gives a false or deceptive answer to a question pertaining to his qualifications with result that counsel is deprived of further opportunity to determine whether the juror is impartial, and the juror is accepted, a party deceived thereby is entitled to a new trial even if the juror's possible prejudice is not shown to have caused an unjust verdict." (Syl. 3.)

The application of the rule to the case at bar is obvious. Juror Swanson stated under oath that neither she nor any member of her family had had a damage suit. Counsel for defendants relied on her answer, as they had a right to do. Had she replied truthfully counsel would have had the opportunity to go into the matter further so as to determine her qualifications with reference to being fair and impartial insofar as plaintiff and defendants were concerned. Plaintiff was a girl just a few years younger than the daughter of juror Swanson for whose alleged wrongful death the juror and her husband had filed an action a few years previously in the same court. Materiality and relevancy of the point under consideration are obvious!

Although perhaps not quite so pertinent, counsel for defendants also were entitled to a truthful answer from juror Karge pertaining to an action filed a few years previously by her husband for damages arising out of an automobile collision.

We pass now to the matter of at least one, and probably two or three, members of the jury going to, or very close to, the scene of the collision in order to make calculations and measurements as to distances. It is elementary that the court has authority to, and in many instances does, permit a jury, under proper instruction and supervision, to view the location or scene of some thing involved in a lawsuit. No such procedure was followed in this case. Litigants have a right to expect that with respect to evidence juries will confine themselves to the evidence introduced, and that members of a jury will not engage in any "extra curricular" activities such as were indulged in here.

In the early case of *Ortman v. U. P. Rly. Co.*, 32 Kan. 419, 4 Pac. 858, which was an appeal in a condemnation proceeding, two of the jurors, without the direction or consent of the court, after the evidence had been submitted and before arguments of counsel were made, personally inspected the real estate in controversy in

order that they might have a better understanding of the case and of the value of the land. Their action was held to be misconduct.

In *Barber v. Emery*, 101 Kan. 314, 167 Pac. 1044, the following statement appears:

"For the jury to consider independent facts, unsifted as to their accuracy by cross-examination, and unsupported by the solemnity attending their presentation on oath before judge, jury, parties and bystanders, and without an opportunity to contradict or explain them can never be countenanced." (p. 319.)

See also the case of *Downs v. Fossey*, 144 Kan. 456, 61 P. 2d 875, in which an order granting a new trial for misconduct of the jury was upheld.

It is quite correct, as plaintiff contends, that there are decisions of this and other courts to the effect that, generally speaking, the question whether misconduct on the part of a jury constitutes reversible error is really one for determination by the trial court and that its ruling thereon will not be disturbed in the absence of a clear abuse of discretion. (*Kerby v. Hiesterman*, supra.) However, the rule has its limitations, and, in the instant case, in order to uphold the denial of a new trial this court is asked to place its stamp of approval on untruthful answers by jurors to very material questions touching their qualifications to sit in the trial of the case, and further, to sanction the other matter of misconduct shown by the record. We cannot do so. Courts should not condone deceptive evasion of fundamental concepts of justice. Because of other matters appearing in the record, we think the application of the rule is of particular importance in the present case. In view of our disposition of this appeal, other assignments of error require no discussion.

From the record before us it is clear that the actions and conduct of certain members of the jury constituted such misconduct as to deprive defendants of a fair trial. Under such circumstances this court has no alternative. The judgment of the lower court is therefore reversed with directions to grant a new trial.