No. 43,766

Marjorie K. Levy, *Appellant,* v. Everett Jabara, *Appellee.*

(396 P. 2d 339)

Opinion filed November 7, 1964.

*Clyde Wendelken,* of Wichita, argued the cause, and *Henry E. Martz, Elliott Fry* and *Kent McCormick,* of Wichita, were with him on the brief for the appellant.

*H. E. Jones* and *Robert J. O'Connor,* of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, Wm. P. Thompson, Jerome E. Jones, Robert J. Roth* and *William R. Smith,* of Wichita, were with them on the brief for the appellee.

The opinion of the court was delivered by

Wertz, J.: This action was brought by Marjorie K. Levy, plaintiff (appellant), against Everett Jabara, defendant (appellee), to recover damages for severe and permanent injuries sustained by her, pain and suffering, mental anguish, and medical and hospital expenses incurred as a result of her slipping and falling on ice negligently permitted to remain on the walkway of defendant's place of business. Recovery was sought in the sum of $89,500. Issues were joined and the case went to trial. At the conclusion of the trial

the jury returned a general verdict in favor of the plaintiff in the sum of $3,000. Inherent in the verdict was the jury's findings that plaintiff's injuries and resultant damages were the result of the defendant's negligence. There is no appeal by either party on the latter issue.

Plaintiff filed a motion for a new trial generally and a motion for a new trial limited to the question of damages only, asserting among other grounds that the verdict was so inadequate as to be permeated with passion and prejudice and misconduct on the part of the jury. At the hearing on the motions plaintiff offered in evidence an affidavit by one of the jurors to the effect that during the trial or during the deliberations of the jury two or more of the jurors made an unauthorized view of the premises and site of the accident. The trial court took the motions and evidence under advisement. From a subsequent order of the trial court overruling the motions and entering judgment for the plaintiff on the general verdict, plaintiff appeals. Defendant has not cross-appealed.

The pertinent facts necessary to determine the issues involved are as follows: At approximately 8:00 p. m. on December 18, 1961, the plaintiff and her husband, Sol Levy, together with a business friend, arrived at the defendant's restaurant and place of business outside of Wichita where Mr. Levy had previously made reservations for dinner for the three. Mr. Levy drove their automobile up to the front of the canopy, which extended from the main entrance of the restaurant to where he stopped the car preparatory to parking. Plaintiff and their guest stepped from the automobile. While walking under the canopy on bumpy ice and snow plaintiff slipped on the walkway and fell. It is not necessary to recount the evidence about the condition of the walkway as related by the many witnesses since it does not pertain to the issues on appeal.

By reason of the fall plaintiff was numb, shaken and frightened, and in great pain. She was carried to and placed upon the restaurant floor. Shortly thereafter plaintiff was taken by ambulance to the hospital where she was X-rayed. Dr. Lance, an orthopedic surgeon, determined plaintiff had sustained an intertrochanteric fracture of her left femur. The following morning, assisted by Dr. Matassarin, the family physician, Dr. Lance performed open surgery. An eight-inch incision was made through which a Smith-Petersen nail plus a metal immobilization plate with six screws were permanently inserted at the fracture site. Plaintiff

remained in the hospital until December 30, a period of seventeen days. She was unable to bear weight on her left leg for approximately three months, and for some period of time could not sit down.

From the time she was released from the hospital until the summer of 1962 plaintiff was using crutches, a wheel chair and a walker as her physician had instructed. During the mentioned periods of time plaintiff required the attendance of special nurses.

In August 1962 plaintiff fell out of her wheel chair, injured her left knee and was readmitted to the hospital where she remained until September 13, when she was released and again returned to her home.

The substantial pain and shock plaintiff suffered from her injury continued until the date of the trial, May 28, 1963. She had become despondent for fear she would never be able to walk again. Prior to her injury she was a seemingly well-balanced, vivacious person, a good mother and homemaker who painted portraits, played piano and organ, and raised and trained dogs. Subsequent to the injury she consulted a psychiatrist and was under the care of her doctors, Lance and Matassarin. The psychiatrist who examined her diagnosed her condition as a conversion reaction, a nervous disorder causing the individual to believe he has a physical disorder or pain which organically cannot be found. The psychiatrist was of the opinion plaintiff needed psychiatric help. Plaintiff was apprehensive, depressed and mentally upset. She was, according to her family doctor, unstable, scared, unhappy and frightened, and also was rather helpless.

Dr. Lance testified that on May 28, 1963, the date of the trial, plaintiff had a 50 per cent disability to the entire left leg, and he expected her to continue to show improvement for at least another six months. His prognosis was that plaintiff would then have a permanent disability of approximately 25 to 30 per cent of the entire leg. Dr. Lance further indicated there was a causal connection between the fractured hip and the disability in the knee and foot, and pointed out the metal fixation devices in her left hip and the eight-inch scar would be a part of her for the rest of her life. The evidence disclosed plaintiff had a life expectancy of 28.7 years.

An itemized statement of medical, hospital and nursing expenses in the sum of $5,942.57 was introduced in evidence. Objection was

made to $795.25 of the bill for the reason this amount represented the expense incurred by reason of plaintiff's second admission to the hospital. The question of whether or not plaintiff's second admission to the hospital had a causal relation to her original injury was submitted to the jury by the trial court.

In considering plaintiff's first contention, it may be stated the case is analogous to and controlled by the case of *Henderson v. Kansas Power & Light Co.*, 188 Kan. 283, 289, 290, 362 P. 2d 60. There the firmly established elementary rules on the question of granting a new trial under conditions such as presented in the instant case are set out, and what was said there, being applicable here, will not be repeated except to say that in the absence of a statute to the contrary, the general rule is that in a personal-injury action inadequacy of damages constitutes a ground for the granting of a new trial when a verdict, viewed in the light of the evidence as to the severity, duration, extent and permanency of the injuries, is so inadequate as to indicate passion and prejudice on the part of the jury. (See, also, Anno. 20 A. L. R. 2d 276.) The same rule is to be applied in a case where the verdict is claimed to be excessive.

As previously stated, the undisputed medical, hospital and nursing expense of the plaintiff exceeded $5,000. Moreover, approximately seventeen months after plaintiff's injury she had a 50 per cent disability of her leg and after a period of two years from the date of the injury would have a permanent disability of her entire leg of 25 to 30 per cent. Also, plaintiff suffered untold pain and suffering, as hereinbefore related. Yet the jury apparently made no allowance for any of these items, since the verdict was $2,000 less than the plaintiff's actual outlay for medical care. The trial court instructed the jury that if it should find plaintiff was entitled to recover, then the measure of her recovery was what is denominated as compensatory damages, that is, such damages as would fully compensate her for the injury or damage she sustained, and should consider any pain and suffering naturally and directly occasioned by and necessarily arising out of the injury; and further, if it should find the plaintiff was entitled to recover, then she should be allowed a reasonable amount of damages, including medical expenses and subsequent hospital expenses which should be the natural and probable result of her injury.

It is apparent, under the undisputed evidence and the record in

this case, the jury totally disregarded the instructions above related as to its duty in arriving at a verdict in the case. The evidence in the case was sufficient to warrant a verdict for substantial damages. Therefore, we are of the opinion the verdict of $3,000 returned for the plaintiff was so grossly inadequate as to show the jury not only disregarded the trial court's instructions but was influenced by passion and prejudice to the extent a new trial should be granted.

As to the plaintiff's second contention, at the hearing on the motion for a new trial plaintiff submitted an affidavit of one of the jurors to the effect that several of the jurors admitted viewing the premises where the accident occurred and comment was made in the jury room in reference thereto. This court, in the case of *Kaminski v. Kansas City Public Service Co.*, 175 Kan. 137, 140, 259 P. 2d 207, had a similar matter before it, and there stated:

". . . It is elementary that the court has authority to, and in many instances does, permit a jury, under proper instruction and supervision, to view the location or scene of some thing involved in a lawsuit. No such procedure was followed in this case. Litigants have a right to expect that with respect to evidence juries will confine themselves to the evidence introduced, and that members of a jury will not engage in any 'extra curricular' activities such as were indulged in here."

In view of the stated rule, the action in the instant case constituted misconduct. While such misconduct in and of itself may not have constituted prejudicial error requiring reversal, from a review of the record as a whole, and the inadequacy of the verdict coupled with the unauthorized viewing of the scene of the accident, we are of the opinion the verdict of the jury is permeated with passion and prejudice and misconduct to such an extent the case should be reversed with directions to the trial court to grant a new trial generally on all issues.

It is so ordered.