No. 44,390

GERTRUDE WALKER, *Appellant,* v. HOLIDAY LANES, INC., *Appellee.*

(413 P. 2d 63)

Opinion filed April 9, 1966.

*J. John Marshall,* of Pittsburg, argued the cause, and was on the brief for the appellant.

*Randall D. Palmer,* of Pittsburg, argued the cause, and *Paul L. Wilbert, Alois R. Bieber* and *Garry W. Lassman,* of Pittsburg, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This action was instituted by plaintiff (appellant) Gertrude Walker against defendant (appellee) Holiday Lanes, Inc. to recover damages for personal injuries sustained by her while bowling in the defendant's bowling alley. From the jury's verdict

and the judgment entered in favor of defendant, plaintiff has appealed.

A brief review of the factual background reveals that plaintiff, an experienced bowler, was participating in an afternoon bowling league. When plaintiff's turn came to bowl, she arose from her score-keeping position, and as she attempted the running-and-sliding process preparatory to delivering the ball, her left shoe did not slide. Instead, because of a beverage having been spilled, her shoe stuck to the floor, causing her to stop suddenly, and in doing so, to twist and injure her back.

The pleadings reveal plaintiff's action was predicated on numerous acts of alleged negligence on the part of the defendant, its agents, servants and employees. Defendant's answer denied it was negligent, and affirmatively alleged contributory negligence on the part of the plaintiff.

On the issues joined, the case went to trial. At the conclusion of all of the evidence the plaintiff moved for a directed verdict, which motion was overruled. Following the jury's verdict, plaintiff filed a motion for new trial, alleging misconduct of the jury, misconduct of counsel, error in the trial court's overruling her motion for directed verdict, and other grounds not here important. The motion was subsequently presented to the trial court and was overruled.

On appeal plaintiff raises two points: (1) the court erred in denying her motion for directed verdict; (2) the court erred in denying her motion for new trial because of misconduct of the jury and misconduct of counsel. Since the second point will determine the disposition of the appeal, we shall proceed directly thereto.

Attached to the motion for new trial were affidavits of two jurors who served on the case, Edward J. Cairns and Ben Andrews, which stated, in substance, that another juror, whose name Andrews did not definitely remember but whom Cairns identified as John B. Cann, had announced, after the case had been submitted to the jury and while it was deliberating, that during the trial he had gone to the bowling alley and had made an independent investigation and inspection of the premises with regard to the location of the chairs, the scoring machines, the posted signs admonishing patrons not to take their beverages into the bowling area, and the bowling area itself. Affiants were unable to recall all of the statements made by Cann in the jury room, but it was Cairns' belief that not only his verdict but also the verdict of other jurors, including Cann, was influenced by these remarks.

At the hearing on plaintiff's motion for new trial the defendant called as witnesses eleven of the twelve jurors who had served on the case, including Cairns, Andrews and Cann. Pertinent portions of the testimony of Cann are as follows:

"Q. Mr. Cann, were you one of the acting, qualified jurors that tried and brought in a verdict in the case of Gertrude Walker versus Holiday Lanes, Incorporated, case number 21,625, that was tried in this court February 4th and 5th this year?

"A. Yes, sir.

.  .  .  .  .  .  .  .  .  .  .  .  .

"Q. Did you hear the testimony in the case, Mr. Cann, concerning how the bowling area was laid out—that there were some signs saying that the patrons shouldn't take refreshments down into the bowling area?

"A. Yes, sir.

"Q. Mr. Cann, during the course of the trial did you go out to the bowling alley the evening of February 4th, 1964?

"A. I did.

"Q. And did you during the deliberations of the jury mention that you had been out there and that the signs were in place?

"A. Yes, sir.

.  .  .  .  .  .  .  .  .  .  .  .  .

"Q. Mr. Cann, during the course of your inspection of the Holiday Lanes during the trial did you also note then besides the signs that the scoring machines were situated in a certain place and the spectators sat and so forth?

"A. Yes, exactly like they stated in here.

"Q. And your purpose in going out there—you wanted to satisfy your own mind—is that right?

"A. Absolutely, yes, sir.

"Q. And I believe also your observation or statement was in the jury room that other people took some soft drinks down to the bowling area?

"A. That is right.

"Q. In other words, Mr. Cann, just generally speaking, you discussed within the jury room during deliberations all the various facets and items you had noticed in your inspection the night before?

"A. No, this and every other one that you observed here—all of them—there was no difference than what they quoted here.

"Q. And you satisfied your mind that night that the testimony you had heard about the condition was the same?

"A. Yes, sir.

"Q. But before going out there you weren't satisfied in your own mind?

"A. Not too sure, no, sir."

The foregoing testimony reveals that Cann made his view of the bowling alley premises on the evening of the first day of trial, which was of two days' duration. In all fairness to the juror, it appears from the record that prior to the overnight recess the jury was not specifically admonished to refrain from any independent investigation. It further appears that Cann was not present on the opening

day of court when the judge, in his orientation remarks, admonished the entire jury panel about such "extracurricular" activities.

We have examined in detail the testimony of the individual jurors and it discloses that the majority of them recall one of the jurors stating he had gone to the bowling alley premises, and that considerable discussion was had in the jury room concerning what he had observed.

Defendant's counsel, in the process of his examination of the individual jurors, attempted to show that Cann's discussion did not influence the verdict. The trial court correctly ruled such questions were improper. The extent to which a juror may be interrogated concerning a verdict received the attention of this court in *Kincaid v. Wade,* 196 Kan. 174, 410 P. 2d 333, where it was stated:

"A juror may not be questioned or evidence received, for the purpose of challenging a verdict, as to what influenced the mental process of the jurors or concerning the mental process by which a verdict was reached." (Syl. ¶ 2.)

The trial court, in overruling plaintiff's motion for new trial, filed a lengthy memorandum in which it found that the investigation by Cann constituted misconduct, but concluded that the substantial rights of the plaintiff were not prejudiced thereby because the misconduct did not inject extraneous matters into the case, but, if anything, simply confirmed the evidence.

Plaintiff, in urging that the misconduct of Cann constituted prejudicial error, relies on numerous decisions of this court, including *Levy v. Jabara,* 193 Kan. 595, 396 P. 2d 339; *Barajas v. Sonders,* 193 Kan. 273, 392 P. 2d 849; *Thomas, Administrator v. Kansas Power & Light Co.,* 185 Kan. 6, 340 P. 2d 379; and *Kaminski v. Kansas City Public Service Co.,* 175 Kan. 137, 259 P. 2d 207, in which cases jury misconduct, either alone or in conjunction with other factors, required the granting of a new trial.

Conversely, the defendant, while not denying that Cann's actions amounted to misconduct, asserts there is no showing that plaintiff's substantial rights were prejudiced or affected thereby, and that pursuant to K. S. A. 60-261 errors or defects in the proceedings which do not affect the substantial rights of the parties must be disregarded. Defendant cites and relies on several of our decisions in which we affirmed the trial court's denial of a motion for new trial on the question of misconduct of the jury. An examination of those cases, however, discloses a variety of factual situations quite unlike those of the instant case. Defendant particularly relies on

what was said in *Rudy v. Headley*, 103 Kan. 417, 173 Pac. 913, in which it was stated that even if information gained by a juror from an independent investigation were regarded as evidence, it was only cumulative upon an unimportant feature of the case. In applying this reasoning to the instant case, defendant argues that Cann's investigation related only to matters that were cumulative of the evidence already in the case and did not directly bear on the question of negligence of either party.

In *Thomas, Administrator v. Kansas Power & Light Co.*, supra, the established rules relating to appellate consideration and review of rulings on a motion for new trial based on misconduct of the jury were stated and applied, and they are incorporated herein by reference as being equally applicable to the instant case.

The most recent pronouncement of this court on jury misconduct may be found in *Kincaid v. Wade*, supra, which involved an independent investigation by several members of the jury of the driving habits of one of the parties to the action. There, reference was made to a number of the same decisions cited and relied on by the plaintiff in the instant case. In holding that the misconduct of the jurors amounted to a denial of a fair trial, the court said:

".  .  . where a member or members of the jury make. an independent investigation of a material issue of fact and report the results thereof to the jury during its deliberations, there is misconduct requiring an order granting a new trial. The reason for the rule is clear. A 'fair trial,' as the term is applied to judicial ·proceedings, anticipates the right to object to the admission of evidence, cross-examine the witnesses and rebut the evidence introduced. All of this is denied where a juror makes an independent investigation of an issue of fact and reports to the jury in the secrecy of its deliberations. It might also be suggested that a party could hardly be said to have a trial by jury as that term is understood in American jurisprudence, if each juror was permitted to make an independent investigation of the facts." (pp. 176, 177.)

No useful purpose would be served in detailing the evidence touching upon the alleged negligence of the defendant and alleged contributory negligence of the plaintiff. Cann's own testimony, however, revealed his inspection of the bowling alley pertained to matters having a significant bearing on these issues. In fact, Cann admitted that the very reason he made the investigation was because of his dissatisfaction with some of the testimony he had heard in the courtroom. Under such circumstances it is difficult to suggest that plaintiff has had a *fair* trial.

Additional alleged misconduct by another juror, John Rupar, at the time of his voir dire examination, is pointed out by the plaintiff,

although she frankly acknowledges it is not of the same magnitude as that of Cann. Since the voir dire examination was not recorded by the court reporter, we must resort to the affidavit of plaintiff's counsel, the contents of which are not denied, and the testimony of Rupar himself. During voir dire examination inquiry was made of all prospective jurors about whether or not any of them had ever been involved in any litigation. None responded in the affirmative. However, at the hearing on the motion for new trial Rupar testified that he had been a party plaintiff in an action filed in city court on a claim for property damage arising out of an automobile accident; that the case was settled; and that the defendant in that case was represented by a Mr. Palmer, but he did not know if it was the same Mr. Palmer who represented the defendant in the instant case. Counsel for the defendant, in his brief, admits he was the attorney involved in that case.

The alleged misconduct of Rupar presents a situation similar to that which arose in *Kaminsky v. Kansas City Public Service Co.*, supra. There, two jurors failed to reveal prior lawsuits for personal injuries in which they or their families were involved. Although admittedly there was additional misconduct of the jury shown that required a new trial, the court noted in its opinion that a prospective juror who gave a false or deceptive answer to a question pertaining to his qualifications resulted in counsel's being deprived of further opportunity to determine whether or not the juror was impartial. Also, see *Kerby v. Hiesterman,* 162 Kan. 490, 178 P. 2d 194.

While Rupar's misconduct may not be considered as of the same gravity as that of Cann, nevertheless it exemplifies conduct that does not lend itself to the fulfillment of the right of a litigant to trial by an *impartial* jury.

One other facet of the trial deserves serious attention, namely, the alleged misconduct of counsel. No record was made of the closing arguments. Again, we must refer to the affidavit of plaintiff's counsel, which was attached to the motion for new trial. It states:

". . . counsel for defendant stated in substance that it was notorious the verdicts that were given in Crawford County, Kansas, and that at long last Pittsburg was beginning to get industry to ease the economic situation and if a verdict was rendered in plaintiff's favor it would be publicized far and wide and it would hurt the reputation of the citizens of Pittsburg as well as causing industry to go elsewhere; that despite objections of counsel for plaintiff, which were sustained, counsel for defendant continued such remarks to the jury; . . ."

Defendant's counsel filed no counteraffidavit, so it must be assumed the affidavit substantially and correctly reflects the portions of the final argument of which plaintiff complains. The trial court, in its memorandum decision overruling the plaintiff's motion for new trial, specifically noted that matters concerning public opinion had been improperly injected in the case by the defendant.

The general rules of law hereinbefore related and applied to misconduct of the jury also apply in large measure to misconduct of counsel. The permissible limits of closing argument were broadly defined in *Taylor v. F. W. Woolworth Co.*, 151 Kan. 233, 98 P. 2d 114, in which it was stated:

"This court has consistently followed the general rule against imposing narrow and unreasonable limitations upon argument of counsel made to the jury. Counsel are entitled to comment freely upon the evidence, upon the credibility of witnesses where such comment is based upon facts appearing in the evidence, and to state their own views concerning the evidence. But countenance is not to be given to arguments based in no way upon the evidence or to appeals outside the record manifestly intended to create passion and prejudice on the part of the jury. . . . It is impossible to lay down any definite rule as to when an improper argument by counsel, objected to at the time, will be ground for a new trial, and the circumstances of each case are controlling (2 R. C. L. 453). . . ." (p. 241.)

When error is alleged because of improper argument of counsel in which reference is made to clearly extraneous matters, and objection has been timely interposed, it is incumbent upon the court to ascertain the purpose and probable effect of such comments on the jury. If under the facts and circumstances the only purpose and probable effect of the comments were to produce a prejudicial attitude toward a litigant, a new trial may result. (*Taylor v. F. W. Woolworth Co.*, supra.) Also, see *Loftin v. City of Kansas City*, 164 Kan. 412, 190 P. 2d 378, where a number of our decisions touching upon misconduct of counsel are reviewed.

While this court is not inclined to take out of context portions of a closing argument which might at first blush appear to be improper, nevertheless the argument of defendant's counsel in this case goes beyond the bounds of propriety and transcends the latitude ordinarily permitted. Manifestly his statements refer to matters clearly outside the evidence, and under the circumstances were reasonably calculated, and their probable effect was, to produce a prejudicial attitude on the part of the jury toward the plaintiff. Our conclusion is somewhat strengthened by the fact that counsel

continued his remarks even after objections thereto had been sustained.

The complete record has been carefully reviewed in light of well-established principles of law governing misconduct of a jury and misconduct of counsel. We are not unmindful of our many decisions that whether or not such misconduct constitutes reversible error is a matter for determination by the trial court, and that its ruling thereon will not be disturbed in the absence of a clear abuse of discretion. (*Collins v. City Cab Co.*, 192 Kan. 394, 388 P. 2d 597; *Kaminski v. Kansas City Public Service Co.*, supra.) We acknowledge that a litigant is not entitled to a "perfect" trial but hasten to add that he is entitled to a fair trial. In analyzing this record it is unnecessary to isolate each charge of misconduct and determine whether or not it would justify the granting of a new trial; all the charges must be considered together in relation to the record in its entirety. In doing so, we find that the various acts of misconduct, both of the jury and counsel, have so permeated and tainted the entire proceedings that plaintiff has been deprived of the fair trial to which every litigant is entitled. Under the circumstances the trial court erred in overruling plaintiff's motion for new trial.

In view of our disposition of the case, consideration of plaintiff's first point on appeal is unnecessary. The judgment is reversed with directions to grant a new trial on all issues.