No. 44,876

MARGUERITE E. FURSTENBERG, *Appellant*, v. WESLEY MEDICAL CEN-
TER, Also Known as WESLEY HOSPITAL, Also Known as WESLEY
HOSPITAL AND NURSES TRAINING SCHOOL, and HAHNER, FOREMAN
& HARNESS, INC., Formerly HAHNER-FOREMAN, INC., *Appellees.*

(436 P. 2d 364)

278

Opinion filed January 27, 1968.

*Patrick J. Warnick,* of Wichita, argued the cause and was on the brief for the appellant.

*James R. Hanson,* of Wichita, argued the cause, and *John E. Boyer, Paul J. Donaldson, Kenneth P. Stewart,* and *Robert L. Smith,* all of Wichita, were with him on the brief for the appellee, The Wesley Medical Center.

*Robert C. Foulston,* of Wichita, argued the cause, and *George B. Powers, John F. Eberhardt, Stuart R. Carter, Robert M. Siefkin, Malcolm Miller, Robert N. Partridge, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel J. Stout, Benjamin C. Langel, Phillip S. Frick, Jerry G. Elliott,* and *John E. Foulston,* all of Wichita, were with him on the brief for the appellee, Hahner, Foreman & Harness, Inc.

The opinion of the court was delivered by

FONTRON, J.: The plaintiff, Marguerite E. Furstenberg, commenced this action to recover damages for personal injuries alleged to have resulted from the concurrent negligence of the two defendants: (1) Wesley Medical Center, also known as Wesley Hospital, and as Wesley Hospital and Nurses Training School, and (2) Hahner, Foreman and Harness, Inc., formerly Hahner-Foreman, Inc. For convenience, we shall refer to Mrs. Furstenberg by name, or as plaintiff; to defendant, Wesley Medical Center, as the hospital; and to defendant Hahner, Foreman and Harness, Inc., as Hahner.

The case was tried to a jury where each defendant, at the completion of plaintiff's evidence, filed a motion for a directed verdict. The trial court overruled both motions but sustained an identical motion by Hahner at the conclusion of all the evidence. The trial then continued as to the hospital and a verdict was returned in plaintiff's favor.

Mrs. Furstenberg has appealed both from the order sustaining Hahner's motion for a directed verdict and from the judgment entered in her favor against the hospital, contending, as to the latter, that the verdict was grossly inadequate and rendered under passion and prejudice, and that the jury was guilty of misconduct.

Briefly summarized, the plaintiff's evidence disclosed that between 10:00 and 10:30 p. m., February 11, 1963, she went to the hospital with her son, who had been injured in a high school basketball game; after parking the car, the two of them walked toward

the emergency room entrance, following a driveway which had been torn up, and walking over pieces of concrete which they could see by car lights in the area; that as they neared the emergency room, the entrance to which was a temporary wooden shed with a door opening outward, plaintiff's son stepped ahead to open the door and plaintiff took a step forward into a hole or "gouged-out" place within a foot or two of the arc of the door, which caused her to fall face forward on the concrete floor of the shed; that there were no lights in the entrance area and a nurse told her the electricity had been cut off that one day.

With this brief resumé, we shall first consider plaintiff's contention that there was sufficient evidence of negligence on the part of Hahner to require that the case against it be submitted to the jury. The negligence charged against both Hahner and the hospital was in creating and allowing the hole to exist at the emergency room entrance and in failing to light the area adequately. The jury, in returning its verdict against the hospital, found that the defective or dangerous condition which directly caused plaintiff's fall and injuries was "inadequate lighting."

We believe the evidence presented on plaintiff's behalf wholly failed to connect Hahner with either the creation or the maintenance of the hole which caused plaintiff to fall. Counsel for Mrs. Furstenberg, with admirable candor, concedes that her evidence may have been insufficient to establish negligence on the part of Hahner, but submits that the deficiency was cured by evidence submitted on behalf of the defendants through the testimony of A. B. Davis, Jr., assistant administrator of the hospital, and that of Harold Rausch, Hahner's construction superintendent.

Mr. Davis testified that Hahner commenced work at the hospital on January 30, 1963; and that an old retaining wall was removed and a new one poured on February 7, 1963; that Hahner was breaking concrete at the north side of the emergency area preparatory to putting in supports for a new building; that he did not know whether the concrete had been removed on February 11; that the exterior lights were operated automatically by a time clock, but there was an interruption of power in the area of the old retaining wall due to the construction.

Mr. Rausch testified that Hahner did not build the emergency entrance, which had an asphalt ramp extending three feet to the front for wheelchair patients; that a power shovel and back-hoe

were used to remove the retaining wall which was in the vicinity of the shack over the emergency entrance, but not within the arc of the doorway, and ready-mix concrete trucks were used to pour cement; the trucks were heavy and were used in the entrance area; he had not been in the area after 4:30 p. m. and did not know whether one of Hahner's machines had made the hole, but it could have; that he did not know what had made it. Rausch also testified that snow fences and oil lamps were placed around the construction area to confine it to the north and south of the shack; the lamps were about twelve feet from the entrance and gave a warning light.

In arguing that there was sufficient evidence of negligence on Hahner's part to go to the jury, the plaintiff calls attention to our rule that in passing on a motion for a directed verdict all disputed questions of fact and all inferences which can reasonably be drawn from the evidence must be resolved in favor of the party against whom the motion is directed, and that where reasonable minds might reach different conclusions thereon, the motion should be denied and the case submitted to the jury. (*Schmatjen v. Alexander,* 192 Kan. 807, 391 P. 2d 313; *Brown v. East Side National Bank,* 196 Kan. 372, 411 P. 2d 605.) Plaintiff also stresses the point that where the negligence of two or more persons concur in causing injury to another, those whose acts united in producing the injury will be held liable to the injured party. (*Rowell v. City of Wichita,* 162 Kan. 294, 176 P. 2d 590, and cases cited therein.)

We are not in disagreement with the foregoing principles. However, the question before us, as to Hahner, is whether the record contains substantial competent evidence showing actionable negligence on Hahner's part, when viewed in the light of those principles. Hahner argues vigorously that the testimony of Rausch and Davis, when considered together, provides, at best, a mere possibility or speculation that its equipment created the hole causing the damage. Counsel calls attention to a number of our cases adhering to the rule that findings of negligence may not be based on conjecture or surmise. (*See Beeler v. Railway Co.,* 107 Kan. 522, 192 Pac. 741; *Whiteker v. Wichita Rld. & Light Co.,* 125 Kan. 683, 265 Pac. 1103; *Snyder v. McDowell,* 166 Kan. 624, 203 P. 2d 225; *In re Estate of Modlin,* 172 Kan. 428, 241 P. 2d 692.)

We acknowledge the validity of the principle expressed in the foregoing cases. However, in view of the jury's findings, we do not deem it necessary to decide whether the evidence, which plaintiff

claims would be sufficient to establish that Hahner created the hole, amounts to anything more than pure conjecture.

In answer to special questions, the jury found that the dangerous condition which directly caused plaintiff's injuries was "inadequate lighting." In our view, the record is barren of suggestion that Hahner had any obligation to light the emergency entrance. From what evidence there is on this point, the converse appears to be true.

Mr. Davis, the assistant hospital administrator and coordinator of construction activities, testified he was familiar with the lighting in the area and that the exterior lights were operated automatically by a time clock. It was Davis, also, who testified there was an interruption of power on the date of the accident.

We think the evidence permits no inference of any dereliction of duty on Hahner's part, so far as illuminating the entrance area is concerned. The testimony establishes that Hahner had properly placed warning lamps around the perimeter of the construction area. The implication, we think, is strong that it was the hospital's own responsibility to illuminate its exterior entrances. In our judgment, the trial court did not err in sustaining Hahner's motion for a directed verdict.

Having disposed of the appeal as it relates to Hahner, we direct our attention to the appeal vis-à-vis the hospital. Plaintiff first argues that the verdict was grossly inadequate. This court, it is true, has on infrequent occasions entered reversals on such a basis. In *Corman, Administrator v. WEG Dial Telephone, Inc.,* 194 Kan. 783, 402 P. 2d 112, we held:

"In the absence of a statute to the contrary, the general rule is that where a verdict awarding damages is so inadequate as to indicate passion and prejudice on the part of the jury, a new trial should be granted." (Syl. ¶ 1.)

See, also, *Sundgren v. Stevens,* 86 Kan. 154, 119 Pac. 322, 39 L. R. A. (NS) 487; *Henderson v. Kansas Power & Light Co.,* 188 Kan. 283, 362 P. 2d 60; *Levy v. Jabara,* 193 Kan. 595, 396 P. 2d 339.

However, it is never an easy task for an appellate court to assess objectively, from a cold record, what, if any, passion or prejudice may inhere in a verdict, for it is difficult to exclude from human reckoning factors of a subjective character. Thus we are unable to expound, with omniscient precision, any absolutes, or rigidly fixed standards, by which an answer may be attained. As we observed in the Corman case:

". . . Each case in which the adequacy, or inadequacy, of a verdict is called in question must be determined on the basis of its own facts. Amounts

allowed in other cases can be illuminating only as they may tend to indicate the bounds beyond which a sound public conscience will permit no trespass. . . ." (pp. 784-785.)

In the present action the size of the verdict, $765.00, coincided exactly with the plaintiff's medical expense. This fact alone, however, is deceptive, for the size of the verdict does not accurately portray the net result of the jury's action. At the pleading stage, the hospital filed a counter claim of $1,730.75 against Mrs. Furstenberg for services rendered, the specific items of which are not reproduced in the record. This counter claim was denied and the hospital has not cross-appealed. Thus, in practical effect, the plaintiff has received benefits through this action totalling $2,495.75.

We cannot say that the size of the verdict, when coupled with the denial of the hospital's counter claim, denotes passion and prejudice, or that it is so grossly inadequate as to shock our collective conscience. While it is true that the medical bills were not disputed, and the size of the hospital bill was even stipulated, this does not necessarily mean that the jury made no allowance for loss of earnings or for pain and suffering. As was said by the California court in *Morseman v. Mangum*, 177 C. A. 2d 218, 2 Cal. Rptr. 67, when considering a comparable case:

". . . The jury might have found that the medical bill or the truck repair bill was excessive or that a part of the medical bill related to the pre-existing ailments; and in such event, it might have regarded the total amount of those bills as sufficient to include the amount of damage, if any, sustained by Janssen for loss of earnings and for pain and suffering." (p. 222.)

The above language is peculiarly appropriate here, for the relationship between plaintiff's fall and her subsequent physical condition was in sharp dispute. Hospital records on the date of the fall show no complaint of a foot injury, and X-rays were taken only of plaintiff's right ankle. The records further show an admission to the hospital on March 3, 1963, because of plaintiff's obesity, at which time arthritic conditions were noted, but no X-rays were taken of her foot.

The operation on plaintiff's right foot was on April 4, 1964, more than a year after her fall. The medical evidence linking the excision of a bursa and the sesamoid bones to injuries received in the accident, was tenuous, at best, with one doctor expressing doubt that the fall contributed significantly, if at all, to their removal. Hospital records show nine admissions of Mrs. Furstenberg prior to the accident, and the record of trial is replete with evidence of

her multiple aches and pains together with conditions of obesity, arthritis and hypertension. There is also evidence of her continuous use of high heels which, with her excessive weight, could have been a contributing, if not a causative, factor in plaintiff's foot problems.

The jury may well have doubted that all of Mrs. Furstenberg's foot trouble stemmed from the accident, and may have concluded some of the expenses incurred were not chargeable to the hospital's fault. Moreover, since the record does not disclose what items were covered by the hospital's counter claim, we cannot rule out the possibility that the large hospital bill, even in these times of mounting costs, might have included charges for prior hospitalization.

Whether personal injury has proximately resulted from negligence on the part of another is ordinarily a matter for the jury to determine. ( Rowell v. City of Wichita, supra. ) While it is true that the jury found the plaintiff's injuries were caused by the hospital's negligence, the extent of those injuries was in controversy, and even though the expenses were undenied, the jury was not precluded from questioning the amounts if, from the evidence, they had rational doubt as to their reasonableness or accuracy. ( Swallow v. McCoy, 191 Kan. 386, 381 P. 2d 350. )

In view of the conflicting nature of much of the evidence, coupled with various contradictions in the plaintiff's own testimony, we cannot brand the verdict as so grossly inadequate as to require a new trial.

Plaintiff's final point concerns alleged misconduct on the part of the jury. This question is posed by the affidavit of one juror in which he states that during the trial and the deliberations, members of the jury ascertained from a telephone directory that plaintiff and her husband were engaged in the insurance business; and that during deliberations much emphasis was placed on the type of business the two were in, and discussions were had that plaintiff possibly had been paid and was trying to recover twice for the same injuries.

It was entirely improper for any of the jurors to ascertain the type of business in which plaintiff and her husband were engaged, and to impart that information to their fellow jurors. Such information was not pertinent to any issue before the jury. The curiosity of the offending jurors was no doubt whetted by questions put to the plaintiff and her spouse by plaintiff's own counsel, who in an excess

of caution, prefaced certain questions with an admonition not to mention the type of business they were in. Nevertheless, this cautionary admonition was in no sense an invitation for jurors to engage in snooping expeditions into a matter which was no concern of theirs and was wholly extraneous to the issues they were called upon to decide.

However, we are called upon to determine whether any prejudice can be said to have resulted from the meddlesome jurors and the extraneous conjecturing which followed. For it is not the misconduct of jurors, alone, which necessitates a new trial, but misconduct which results in prejudice to a litigant and impairs his right to a fair and impartial trial. (See discussion in 89 C. J. S., Trial, § 455, pp. 79-80.)

In *Baker v. Western Casualty & Surety Co.*, 196 Kan. 345, 411 P. 2d 711, we adhered to the rule and said:

". . . This court has repeatedly held that before a new trial will be granted for a jury's misconduct substantial rights must have been prejudiced. Some of the more recent cases in which the rule was announced are *Thomas, Administrator v. Kansas Power & Light Co.*, 185 Kan. 6, 340 P. 2d 379 and *Barajas v. Sonders*, 193 Kan. 273, 392 P. 2d 849." (p. 352.)

We have frequently been called upon to consider complaints of misconduct on the part of jurors. In some cases we have deemed the misconduct to be prejudicial, while in others a contrary result has been reached. We shall not attempt to cite all of our cases on the subject, for to do so would unduly lengthen this opinion. In general it may be said that in cases where a juror has assumed to make his own private investigation of material facts in issue, the results of which he makes known to his fellow jurors, we have inferred prejudice.

Examples of this type of misconduct will be found in *Kaminski v. Kansas City Public Service Co.*, 175 Kan. 137, 259 P. 2d 207, in which case one or more jurors, on their own initiative, visited the scene of the collision and measured various distances; in *Kincaid v. Wade*, 196 Kan. 174, 410 P. 2d 333, where three jurors followed a woman defendant involved in a motor accident and reported on her driving habits; in *Barajas v. Sonders*, 193 Kan. 273, 392 P. 2d 849, where a slide rule was used by a juror to determine the point of impact, and to make other mathematical computations; and in *Walker v. Holiday Lanes*, 196 Kan. 513, 413 P. 2d 63, where a juror betook himself to a bowling alley, the scene of a slip and fall incident, and reported the results of his independent investigation.

The conduct deemed prejudicial in the foregoing examples may be contrasted with peccadillos considered by us to be less pernicious. By way of illustration, the latter category has been held to include cases where the jury discussed the possibility of the defendant being covered by insurance (*Newell v. City Ice Co.*, 140 Kan. 110, 34 P. 2d 558; *Domann v. Pence*, 183 Kan. 135, 325 P. 2d 321); where the jury took a dictionary to the jury room and referred to it for the definition of "proximate" (*Pulkrabek v. Lampe*, 179 Kan. 204, 293 P. 2d 998); where, in a condemnation case, certain jurors read and discussed a newspaper account of an award granted an adjacent landowner (*Randle v. Kansas Turnpike Authority*, 181 Kan. 416, 312 P. 2d 235); and a case in which remarks made by a woman juror as to her knowledge of attorney's fees, obtained when she was a legal secretary, were held not prejudicial in an action to recover punitive damages. (*Brewer v. Home-Stake Production Co.*, 200 Kan. 96, 434 P. 2d 828.)

It may be noted that in none of the latter cases had a juror engaged in the extracurricular activity of carrying on an independent investigation into controverted material issues. We must not be understood as saying, however, that misconduct on the part of a juror can be prejudicial only where such an unauthorized personal investigation has been made.

The plaintiff's charges of misconduct were included in her motion for a new trial and presumedly were fully aired when the motion was presented. After hearing arguments of counsel, the trial court overruled the motion for a new trial and entered judgment on the verdict, thus rejecting plaintiff's claim of prejudice.

Our rule has always been that it is for the trial court to determine, in the first instance, whether misconduct on the part of the jury has resulted in prejudice to a litigant, and that its judgment thereon will not be overturned unless abuse of discretion is manifest. In *Walker v. Holiday Lanes*, supra, we expressed ourselves in this way:

". . . We are not unmindful of our many decisions that whether or not such misconduct constitutes reversible error is a matter for determination by the trial court, and that its ruling thereon will not be disturbed in the absence of a clear abuse of discretion. . . ." (p. 520.)

The rationale of the rule is obvious. The trial court is situated far more advantageously to judge whether a verdict stems from misconduct than is this court, on appeal. Not only does the trial judge personally see and hear each witness but he is in a position to observe the conduct of and interrelationship existing between

litigant, counsel and jury, and can intuitively sense the atmosphere in which the proceedings are being conducted. The trial court can thus call to its assistance experiences, observations and occurrences which are denied to us. In the recent case of *Brown v. Hardin,* 197 Kan. 517, 419 P. 2d 912, we had occasion to quote from *Collins v. City Cab Co.,* 192 Kan. 394, 388 P. 2d 597, wherein it was said:

"A trial court is in a better position than an appellate court to determine whether a verdict resulted from the asserted misconduct of counsel or from passion and prejudice, and, ordinarily, its conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly in error. (Syl. ¶ 3.)" (p. 523.)

While this language was directed toward misconduct of counsel, we believe it equally appropriate where misconduct on the part of jurors is asserted.

Counsel for the hospital insists that the juror's affidavit amounts to nothing more than that the jury engaged in speculation as to whether plaintiff carried insurance. We are inclined to think this is true. As previously pointed out, this court has more than once held that speculation by a jury that the defendant was insured did not constitute prejudicial error. (*Newell v. City Ice Co.,* supra; *Domann v. Pierce,* supra.) The situation now before us seems comparable, even though the speculation concerned plaintiff's coverage. It would be somewhat anomalous, as we see it, for us to hold that speculation concerning the insurance coverage of a plaintiff jeopardizes his right to a fair trial, but is not prejudicial to a defendant when such speculation is directed toward him.

The plaintiff would have us infer prejudice from what she has called a "grossly inadequate verdict." It is true that in *Levy v. Jabara,* supra, we did couple a grossly inadequate verdict with a juror's unauthorized inspection of the accident scene, in holding that prejudicial misconduct had occurred which required a new trial. In the present case however, we hold the verdict not so inadequate as to indicate passion or prejudice. Consequently, Levy provides no precedent.

From the record as a whole we are constrained to say that prejudice is not shown to have resulted from the unorthodox and improper behavior of this jury, hastening to add, however, that its conduct reflects no great credit on the jury system.

For reasons already given the judgment of the court below is affirmed.