NOT DESIGNATED FOR PUBLICATION

No. 120,043

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JERRY BENNING,
*Appellant*,

v.

CHRISTINA PALMER,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed April 17, 2020. Affirmed.

*Atif Abdel-Khaliq*, of McIntosh Law Offices, of Kansas City, for appellant.

*Emily A. Yessen* and *Brette S. Hart*, of Harris & Hart, LLC, of Overland Park, for appellee.

Before BRUNS, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Christine Palmer admitted fault for having rear-ended Jerry Benning's car, but she disputed the amount of damages. At trial, the jury returned less than the full amount of medical expenses that Benning sought. Benning moved for a new trial, arguing the verdict was contrary to the evidence. But the district court denied his motion. Benning appeals that denial, arguing the verdict was contrary to the evidence because the jury arbitrarily disregarded uncontroverted and trustworthy evidence. We find the evidence supports the verdict, as it raised doubt about the reasonableness and necessity of some of Benning's medical expenses.

1

Benning also argues the jury gave the verdict under the influence of prejudice as a result of Palmer's counsel's closing arguments. The closing argument was not improper. Thus, the district court did not abuse its discretion in denying the motion for a new trial.

*Factual and Procedural Background*

In July 2016, Christina Palmer rear-ended Jerry Benning's car when he was waiting at a stoplight. After Benning was helped out of his car, an ambulance took him to the Emergency Room (ER). The ER physician diagnosed Benning with muscle strain of the neck and a post-traumatic headache, and a CT scan showed no acute traumatic findings of the cervical spine. Although Benning still complained of pain, the hospital released him within three hours.

A month later, Benning started treatment with Dr. Kyle Janssen, a chiropractor at Kansas Spine Center. Benning complained of neck and lower back pain and stiffness that arose after the accident. Dr. Janssen diagnosed Benning with muscle strain, functional impairment, and pain in the neck and back. Dr. Janssen's treatment consisted of chiropractic adjustments, low-level laser therapy, electrical muscle stimulations, cryotherapy, and spinal decompressions. During this time, Benning fell at home and landed on his back, causing additional soreness. After two months at Kansas Spine Center, because Benning showed little signs of improvement and his pain persisted, Dr. Janssen referred him to The Center for Manual Medicine for physical therapy.

At the Center for Manual Medicine for physical therapy, Benning engaged in therapeutic exercise, gait training, manual therapy, spinal traction, electric stimulation and ultrasound. This treatment lasted about two months. Yet Benning's neck and back pain did not subside.

In April 2017, Benning sued Palmer for negligence, asking for damages over $50,000. In her answer, Palmer admitted fault, but contested damages.

During litigation, Benning visited Dr. S. Katta, a specialist in physical medicine and rehabilitation. Dr. Katta identified several of Benning's conditions that pre-existed the automobile accident:

- Degenerative disk disease of the cervical and lumbar vertebrae;
- Degenerative joint disease of the cervical and, probably, lumbar vertebrae;
- Diabetic peripheral neuropathy;
- Arthritis in his neck and back joints;
- Frozen left shoulder;
- Probable associated ulnar nerve compression neuropathy at the elbow; and
- Degenerative joint disease in his knees.

These conditions are known to cause pain, stiffness, and tingling. Dr. Katta did not see any clinical evidence of a pinched nerve. As to the auto accident, Dr. Katta's diagnosis was a "cervical, thoracic, and lumbar sprain superimposed on degenerative disk disease and degenerative joint disease of [the] cervical and . . . probably [of the] lumbar vertebrae." Dr. Katta agreed that the muscle sprains would typically heal on their own within six to eight weeks. Although Benning's pain was chronic, Dr. Katta could not say if the muscle sprains would be permanent as a result of the car accident. Portions of Dr. Katta's deposition were played to the jury at trial.

At trial, Benning testified to several other injuries. In 1970, Benning had neck and back pain, but everything had "healed up." In 2005, he slipped on ice and injured his head and shoulder. As a result, he started using a cane a few times a month. After the accident with Palmer, however, he used the cane every day to deal with the pain in his lower back.

3

In 2015, Benning had his gallbladder removed. In December 2017—after Dr. Katta had seen him—Benning had a spike in pain after someone backed into his car.

Benning presented the following medical bills, totaling $12,798.96:

- American Medical Response (AMR): $946.41
- Emergency Room, including CT scans of head and cervical spine: $4,463.55
- ER physician and physician's assistant: $614.00
- Radiologist: $397.00
- Kansas Spine Center LLC (Dr. Janssen): $4,938.00
- The Center for Manual Medicine: $1,440.00

When testifying at trial, Dr. Janssen stated he believed the treatment from both Kansas Spine Center and The Center for Manual Medicine was reasonable and necessary. Dr. Janssen also believed Benning suffered permanent injury to his back and neck because of the July 2016 accident. Yet he admitted that he did not know Benning's baseline condition before his accident with Palmer.

The jury awarded Benning $7,246.96 in medical expenses and $2,853.04 in non-economic damages, totaling $10,100.

Benning moved for a new trial. Benning's sole argument was that "the jury verdict manifests disregard for the Court instructions." He asserted that because Palmer did not present any evidence challenging the total medical bills, the jury "did not have an alternative to returning medical expenses for Mr. Benning in the amount of $12,798.96." He alleged that the jury's erroneous damages finding was based on counsel's statement during closing arguments that they could ignore some of his medical bills.

The district court denied Benning's motion, stating, "the jury followed the court's instructions. It considered all of the evidence presented. It assigned appropriate weight. Counsel for Defendant did not make any inappropriate argument. The jury's verdict was not contrary to the evidence."

Benning timely appeals.

*Did the District Court Abuse its Discretion in Denying Benning's Motion for a New Trial?*

Dissatisfied with the verdict, Benning now asks this court to grant him a new trial. K.S.A. 2019 Supp. 60-259(a)(1) provides that a district court may grant a motion for a new trial for six reasons. Benning asserts two here: "the verdict, report or decision was given under the influence of passion or prejudice" and "the verdict, report or decision is in whole or in part contrary to the evidence." K.S.A. 2019 Supp. 60-259(a)(1)(C), (D). Benning argues that the verdict was contrary to the evidence because the jury arbitrarily ignored uncontroverted evidence and that the verdict was given under the influence of prejudice because Palmer's counsel's statements encouraged it.

*Standard of Review*

The decision to grant a motion for a new trial is within the district court's discretion. K.S.A. 2019 Supp. 60-259(a). Thus, we will not disturb the district court's ruling on a motion for new trial unless the district court abused its discretion. *City of Mission Hills v. Sexton*, 284 Kan. 414, 421, 160 P.3d 812 (2007). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). The party asserting error bears the burden of

showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

*The Jury's Verdict was not Contrary to the Evidence.*

Benning first argues the district court erred by finding the verdict was not contrary to the evidence. Benning contends the jury arbitrarily ignored uncontroverted evidence when it refused to award the total amount of medical expenses. Benning asserts that the jury arbitrarily refused to pay Dr. Janssen's bill and the ER physician's bill. In Benning's view, these medical bills were uncontroverted because Palmer "presented no evidence against any of the bills, nor argued against the reasonableness or necessity of any amount presented by the appellant." Benning contends that because no evidence showed Dr. Janssen's testimony, which affirmed the reasonableness and necessity of the medical expenses, was untrustworthy or unreliable, the jury had to award the full amount of medical expenses.

*Standard of Review for Sufficiency of Jury Verdict Evidence*

When a party challenges a jury verdict as being contrary to the evidence, it is not the function of an appellate court to weigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the appellate court should not intervene. *Unruh v. Purina Mills*, 289 Kan. 1185, 1195, 221 P.3d 1130 (2009).

*Analysis*

The plaintiff bears the burden of proving damages in a negligence action. And the trier of fact determines, based upon the evidence, the amount of compensatory damages the plaintiff receives. *Cerretti v. Flint Hills Rural Electric Co-op. Ass'n*, 251 Kan. 347,

6

362, 837 P.2d 330 (1992). Compensatory damages include the cost of medical care. See *Shirley v. Smith*, 261 Kan. 685, 693, 933 P.2d 651 (1997) (categorizing medical expenses as economic damages).

"Kansas courts do not reflexively order liable defendants to pay the full amount billed by the health care providers to injured plaintiffs." *Martinez v. Milburn Enterprises, Inc.*, 290 Kan. 572, 598, 233 P.3d 205 (2010); see K.S.A. 40-3117 (in vehicle-related tort actions "the charges actually made for medical treatment expenses shall not be conclusive as to their reasonable value"). Instead, the value of damages is based on the reasonable expense of treatment and the necessity of the treatment in relation to the defendant's negligence. See *Martinez*, 290 Kan. at 598 ("Kansas courts instead have typically based the value of damages on the reasonable expense of treatment."); *Furstenberg v. Wesley Medical Center*, 200 Kan. 277, 283, 436 P.2d 369 (1968) (stating, even though expenses were uncontroverted, the jury could question the reasonableness or accuracy of the amounts); *Lewark v. Parkinson*, 73 Kan. 553, 555-56, 85 P. 601 (1906) (damages awarded for reasonable and necessary services); PIK Civ. 4th 171.02 (2016 Supp.) (recoverable medical expenses include "reasonable expenses of necessary medical care"); 22 Am. Jur. 2d, Damages § 183. The trier of fact also determines the reasonableness and necessity of medical expenses. *Cansler v. Harrington*, 231 Kan. 66, 69, 643 P.2d 110 (1982).

The defendant has a right to challenge the reasonableness and necessity of the plaintiff's medical expenses. See *Martinez*, 290 Kan. at 598. For vehicle-related tort actions, this right is codified in K.S.A. 40-3117. This statute allows for the admission of evidence that the reasonable value of medical expenses was different from the actual amount charged. Evidence of this nature "typically has been admitted through cross-examination of plaintiff's witnesses, by direct examination of defendant's witnesses, or both." 290 Kan. at 599; see *Pope v. Ransdell*, 251 Kan. 112, 123, 833 P.2d 965 (1992) (stressing the importance for the opportunity to cross-examine expert witnesses).

7

Benning is correct that Palmer did not present any alternate billings or dispute the charged amount of medical expenses. Still, the evidence of their reasonableness and necessity was controverted through Palmer's cross-examination. We look at the evidence in the light most favorable to Palmer. See *Unruh*, 289 Kan. at 1195.

First, the evidence showed Benning had pre-existing conditions. So the jury had to decide whether Benning's medical expenses were caused by the car accident or were, in part, caused by his pre-existing conditions. The witnesses spoke of the prolonged deterioration of Benning's body. Benning's work was asbestos, lead, and hazardous waste removal and demolition. He has carpal tunnel, hypertension, diabetes, and degenerative disk and joint diseases of the neck and spine, which can cause chronic pain. His neck and back problems began in 1970. In 2005, he slipped, hit his head, and developed a frozen shoulder. Since then, he has used a cane to help him walk. Benning also fell on his back within three months of the accident here.

Second, the diagnosis after the accident did not reveal major damage. Benning was able to remove himself from his car with help. AMR's assessment of Benning revealed no trauma. The ER physicians did not find any acute traumatic damage to the cervical spine, and the hospital released him after a short time.

Third, Dr. Katta did not clearly attribute most of Benning's conditions to the accident. Dr. Katta believed Benning suffered muscle sprains in his back and neck as a result of the accident. These sprains usually heal within six to eight weeks. But Benning had pre-existing degenerative diseases. So it is possible the accident could have aggravated Benning's pre-existing condition. But Dr. Katta could not say this. He could not state whether Benning's muscle sprain had healed itself and Benning suffered only from preexisting degenerative condition or whether the accident had permanently aggravated Benning's degenerative condition. He also could not say the muscle sprains were permanent. Dr. Katta did not have an objective picture of Benning's health before

8

and after the accident so he could not tell if the accident had worsened Benning's condition.

Fourth, although Dr. Janssen opined that the accident caused permanent damage, other evidence showed his opinion may not have been wholly reliable. See *Cerretti*, 251 Kan. at 363 (stating jury is not bound by expert testimony and may determine how much weight to accord it); *Beard v. Montgomery Ward and Co.*, 215 Kan. 343, 348, 524 P.2d 1159 (1974) (stating while a trier of fact may not arbitrarily refuse to consider the testimony of any witness, it is not obligated to give effect to any evidence which, in its honest opinion, is unreliable, even if such evidence be uncontradicted). Like Dr. Katta, Dr. Janssen did not know Benning's baseline before the accident. And Dr. Janssen is not a medical doctor, but a chiropractor. No evidence was presented concerning Dr. Janssen's training or ability to give a medically accurate diagnosis or prognosis or to correctly read CT scans. And, as to his diagnosis of pain, Dr. Janssen admitted that his goal is not to contest whether the patient is in pain, but to help improve it. Although Dr. Janssen believed his treatment and the physical therapist's treatment were necessary and reasonably charged, based on the evidence above, the jury could reasonably doubt his testimony.

Benning objects to Palmer's line of questioning about the scope and stature of Dr. Janssen's profession as a chiropractor. Benning asserts that these questions invited the jury to be arbitrary and capricious and show unwarranted prejudice against a legally accepted field of healing. Yet, Benning failed to object to this line of questioning at trial, so we shall not address that objection on appeal. See *Foster v. Stonebridge Life Ins. Co.*, 50 Kan. App. 2d 1, 25, 327 P.3d 1014 (2012) (stating K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record).

The evidence, viewed in the light most favorable to Palmer, supports the jury's finding that Benning's reasonable and necessary medical expenses were less than he requested. See *Stubbs v. Potocnik*, No. 106,934, 2012 WL 1970252, at *6-7 (Kan. App. 2012) (unpublished opinion) (stating the jury could reasonably have awarded less than the submitted medical bills).

*The Verdict was not Given Under the Influence of Passion or Prejudice.*

Next, Benning argues that Palmer's counsel made improper statements in closing argument that made the jury verdict prejudicial and decided without reason.

Benning did not object at trial to any statements made during closing argument. But we may review on appeal a claim of prosecutorial error based on comments made during voir dire, opening statements, or closing argument even when, as here, no contemporaneous objection was made at the trial level. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012); see *State v. McBride*, 307 Kan. 60, 64-65, 405 P.3d 1196 (2017) (statements during closing argument). We apply that same rule here, in a civil case.

But under K.S.A. 2019 Supp. 60-259(c), alleged errors must be stated specifically in the motion for a new trial. *State v. Zimmerman*, 251 Kan. 54, 67, 833 P.2d 925 (1992). See *Walston v. Piquard*, No. 97,805, 2008 WL 4291475, at *7 (Kan. App. 2008) (unpublished opinion) (considering only the grounds stated in the motion for new trial). Issues not raised before the district court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011).

Benning's motion for a new trial cites only K.S.A. 2019 Supp. 60-259(a)(1)(D)— that the verdict is contrary to the evidence. Benning argued to the district court that Palmer's counsel's improper statements during closing argument caused the jury to reach

10

a verdict contrary to the evidence. We have resolved that issue above. Yet we have also reviewed the closing arguments and agree with the district court that they were not improper.

The district court did not abuse its discretion in denying Benning's motion for a new trial.

Affirmed.